## THE UNION DEPOT RAILROAD COMPANY v. THE SOUTHERN RAILWAY COMPANY et al., Appellants.

IN BANC.

1. **City Charter, Acceptance of**: STREET RAILWAY COMPANY. A city railway company may accept the provisions of a city charter which went into effect after the incorporation of the company, and such acceptance is as binding on the company as if it had acquired its own charter subsequently to the adoption of the city charter.

2. ——— : STREET RAILWAY : RUNNING OVER TRACK OF ANOTHER COMPANY. Where a city railway company accepts the provisions of a city charter that any such company shall have the right to run its cars over the track of any other company by paying just compensation therefor such acceptance creates a contract between the city and the company, and is binding on the latter.

3. ——— : ——— : CONDEMNATION PROCEEDING. Nor is it necessary in order for such right of user to be acquired by another company that it resort to condemnation proceedings.

4. **St. Louis City Charter**: STREET RAILWAY: USING TRACK OF ANOTHER. Section 6 of article 10 of the St. Louis city charter confers upon the city the power to make rules and regulations for determining the compensation to be paid by one company for such user of another's track.

5. ——— : ———. Said section 6 of article 10 of the charter of the city of St. Louis also confers the power on the city council to make the award of the commissioners as to the amount of compensation reviewable by the circuit court.

*Appeal from St. Louis City Circuit Court.* — HON. J. A. SEDDON, Judge.

REVERSED AND REMANDED.

*Lubke & Muench* for the Southern Railway Company, appellant, and *Leverett Bell* for the Mayor, appellant.

(1) In this state the property and franchises of corporations are without exception subject to the power

of eminent domain. Const., art. 12, sec. 4. And when the right to construct or operate a street railroad in any city, town or village is sought, the consent of the municipality is essential to the grant. It is also essential to validate a transfer of the franchise. Const., art. 12, sec. 20. Although the effect of this provision of the fundamental law of the state is to make the municipality's control of its streets in respect to these franchises plenary, the framers of the charter of the city of St. Louis prevented its abuse by inserting in that instrument the article 10, of which section 6 is part. R. S. 1889, p. 2132. ( 2 ) Section 6 of this charter has the special force and effect of prohibiting exclusive grants, and gives such a public character to the superstructures of existing street railways that the right to impose further burdens thereon is clearly vested in the city. But, independent of this charter provision, the settled law is, that when a grant to construct and operate a street railway has been made by a municipality the same power may by grant to another company vest the latter company with the right to use the tracks of the first company, provided reasonable compensation is made. *Railroad v. Kerr*, 45 Barbour, 138 ; *Railroad v. Railroad*, 36 Ohio St. 239 ; *Railroad v. Railroad*, 19 American Law Register, 769, with note. ( 3 ) An injunction will not lie to prevent the appropriation by the new company on the ground that the compensation is inadequate unless this is alleged and proven. *Railroad v. Railroad*, .36 Ohio, *supra*. ( 4 ) Street railroad companies in St. Louis are public corporations and common carriers for hire using the public highways, and are subject to be regulated by the state under its police power. *Munn v. Illinois*, 94 U. S. 113 ; *Railroad v. Iowa*, 94 U. S. 155 ; *Peik v. Railroad*, 94 U. S. 164 ; Cooley Const. Lim. [ 5 Ed. ] p. 739 ; *Telephone Co. v. St. Louis*, 96 Mo. 623. ( 5 ) If the property here sought to be taken by appellant can be regarded as " private property " within the meaning of section 21 of article 2 of

the state constitution, ordinance 12652 plainly and unequivocally preserves to respondent the ascertainment of the compensation to be paid as required by the constitution. Every right of respondent in this regard is carefully guarded by the ordinance, including the right to take the matter into the circuit court, where a new appraisement may be ordered. Ord. 12652, secs. 2, 3, 4 and 5 ; *City v. Richeson*, 76 Mo. 470 ; *City v. Thomas*, 100 Mo. 224. The ordinance does not violate section 4 of article 12 of the constitution, by which the right of trial by jury is declared inviolate, because on appeal to the circuit court, under section 5 of the ordinance, a new appraisement may be had, with the intervention of a jury, the same as in other cases of condemnation when the award of commissioners is excepted to. *Almeroth v. Railroad*, 13 Mo. App. 91 ; *Railroad v. Brick Co.*, 85 Mo. 307. The constitutional right to an assessment by a jury is satisfied when the demand therefor is granted after the preliminary appraisement by commissioners. And if the owner appears and himself requests the appointment of commissioners he may thereafter claim the jury. *Railroad v. Story*, 96 Mo. 611. (6) Respondent's petition addressed to a court of eqrity is entirely without merit, and should have been dismissed by the court below on that ground alone. (7) When an agreement to arbitrate has been made, and the arbitrators have failed to agree, a court of equity will enforce the agreement. *Keating v. Korfhage*, 88 Mo. 524. *A fortiori*, it will refuse interference where its aid is sought to repudiate such an agreement. Specific performance of a contract to convey land refused, although performed in part, when the party seeking relief repudiates the contract. *Southworth v. Hopkins*, 11 Mo. 331. (8) Equity will relieve against a usurious contract only on condition that plaintiff has paid the debt actually due. "Seeking equity, he must first do equity." *Rutherford v. Williams*, 42 Mo. 19 ; *Ransom v. Hays*, 39 Mo. 445 ; *Corby v. Bean*,

44 Mo. 379. ( 9 ) The question whether the general statute of the state, providing for the condemnation of private property, is broad enough to entitle appellant, Southern Railway Company, to condemn the right of way involved here is not in the case, and, therefore, we do not discuss it.

*Hitchcock, Madill & Finkelnburg* and *S. P. Galt* for respondent.

( 1 ) The right of eminent domain can only be exercised in conformity with the constitution and the law of the land. · A delegation of the right of eminent domain, being one of the highest powers of sovereignty pertaining to the state itself, and interfering with the ordinary rights of property, should be strictly construed. Cooley on Const. Lim., pp. 529 and 394 and 527; *Currier v. Railroad*, 11 Ohio St. 231 ; *Coal Co. v. Wighton*, 19 Ohio St. 560 ; *Allen v. Jones*, 47 Ind. 442; *Railroad v. Canal Com'rs*, 21 Pa. St. 22; *Bridge Co. v. B. Co.*, 27 N. Y. 93; *State v. Noyes*, 47 Maine, 207; *Bradley v. Railroad*, 21 Conn. 306 ; *Baltimore v. Railroad*, 21 Md. 50 ; *Hannibal v. Railroad*, 49 Mo. 481; *Ellis v. Railroad*, 51 Mo. 203 ; *Cunningham v. Railroad*, 61 Mo. 33. ( 2 ) The only law for the condemnation of property for public use in force in this state when this suit was instituted was article 6, chapter 21, of the Revised Statutes of 1879 ( now R. S. 1889, secs. 2734–2742). ( 3 ) City ordinance number 12652 is no legal warrant for the contemplated acts of the defendant. Its terms violate the constitution of this state and the laws enacted thereunder. ( 4 ) According to section 4 of article 12 of the constitution, " the exercise of the power and right of eminent domain shall never be so construed or abridged as to prevent the taking by the general assembly of the property and franchises of incorporated companies already organized or that may hereafter be organized and subjecting them to public use the same as

that of individuals;" thereby the power of such exercise is reserved to the general assembly, and of course to such persons upon whom it shall confer the power, and in the mode and manner it shall determine. The general assembly has invested the courts with this power, to be exercised in the manner provided by law. (5) The same section of constitution further provides that "the right of trial by jury shall be held inviolate in all trials or claims for compensation, when in the exercise of said right of eminent domain any incorporated company shall be interested for or against the exercise of said right." Ordinance 12652 denies to plaintiff this constitutional right. (6) Section 20, of article 2, of the constitution, provides that when an attempt "is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and as such judicially determined." Ordinance number 12652 submits this question to the mayor of the city of St. Louis, and the commissioners appointed by him. (7) Section 21 of article 2, of the constitution, provides "that private property shall not be taken or damaged for public use without compensation. Such compensation shall be ascertained * * * in such a manner as may be prescribed by law, and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner thereunder divested." A city ordinance is not a "law" within the meaning of this constitutional provision. (8) The municipal assembly of the city of St. Louis has no power or authority whatever to confer upon the circuit court appellate jurisdiction in the premises. The circuit court is a creature of the constitution, and its jurisdiction is provided for in the statutes of this state. See section 3318, Revised Statutes, 1889. The whole proceeding contemplated by ordinance 12652 is extra-judicial before it reaches the circuit court, and *coram non judice* after it

reaches that court. ( 9 ) Section 6, of article 10, of the charter of the city of St. Louis, does not confer, and was not intended to confer, upon the city the power of providing how and in what manner the "just compensation" therein provided for should be determined, but solely provided for the making of such rules and regulations by the city as might be necessary for the practical operation and control of the same tracks by cars of various companies. ( 10 ) Even if the charter of St. Louis authorized such an extra-judicial proceeding as is contemplated by ordinance 12652, it would be void. *Ewing v. Hoblitzelle*, 85 Mo. 64, 67. ( 11 ) Ordinance number 12652 is also in violation of the following constitutional provision: "That no person shall be deprived of life, liberty or property without due process of law." Const., art. 2, sec. 30 ; Cooley, Const. Lim., star p. 355. ( 12 ) Plaintiff is not estopped from disputing the validity of ordinance 12652 by its acceptance of ordinance 12513, approved November 3, 1883.

BLACK, J.—The plaintiff and the first-named defendant are corporations owning street railroads in the city of St. Louis. Prior to the date next mentioned the defendant's road extended southward six or eight miles from the crossing of Sixth and Market streets. The city, by ordinance approved July 19, 1887, gave defendant the right to extend its road from the crossing of Sixth and Market streets east on Market street to Fifth street, thence north on that street some ten blocks, thence west one block, thence south on Sixth street to place of beginning, thus forming a loop. This ordinance also conferred upon the defendant the right to use that part of the plaintiff's track extending for a distance of two blocks on and along Sixth street, upon paying the plaintiff compensation for such use under the provisions of ordinance 12652, enacted to carry into effect section 6, of article 10, of the city charter.

The plaintiff and the defendant corporation having failed to agree as to the compensation to be paid for the use of that part of the defendant's road extending along the two blocks, the plaintiff applied to the mayor for the appointment of commissioners to assess such compensation. The mayor was about to comply with such request, when the plaintiff commenced this suit against the defendant company and the mayor, seeking to restrain them from taking any further action in the matter. The circuit court awarded a temporary injunction which was made perpetual on the final hearing, and from that decree the defendant appealed to this court.

The substantial facts, not before stated, are these : The present charter of the city of St. Louis took effect on October 22, 1876. It was framed and adopted by the voters pursuant to the constitution of 1875. It took the place of and superseded the then charter and all amendments thereof. Const. of 1875, art. 9, sec. 20. The tenth article of the charter treats of street railroads, and gives the municipal assembly power to determine all questions arising with reference to them, whether such questions may involve the construction, granting the right of way, or regulating and controlling them after their completion ; also the power to regulate the time and manner of running cars, and the rates of fare, and to establish a uniform gauge. The sixth section is in these words : "Any street-railroad company shall have the right to run its cars over the track of any other street railroad company, in whole or in part, upon the payment of just compensation for the use thereof, under such rules and regulations as may be prescribed by ordinance, and it shall be the duty of the municipal assembly to immediately pass such ordinances as may be necessary to carry this provision into effect."

Ordinance number 12652, approved January 12, 1884, was designed to carry into effect said section 6 of the charter. This ordinance provides, in substance,

that when one company is authorized by ordinance to run its cars over the track of another company, and the two companies cannot agree as to the compensation to be paid therefor, the company desiring to use such track may make written application to the mayor for the appointment of three commissioners, first giving ten days' notice to the company whose track is to be used. Each company has the right to name one commissioner, and the mayor the third. If either company should refuse to designate a commissioner the mayor may appoint one to represent such company. The commissioners must be disinterested freeholders, must take and subscribe an oath that they will faithfully and fairly hear and examine the matter in controversy, and make a just award to the best of their understanding, and then proceed to hear evidence and examine the track and determine the compensation to be paid, and the time and manner of paying the same. Their award is to be in writing and must be reported to the mayor. It is then the duty of the mayor to file the report and the original application and all papers pertaining to the proceeding with the city register, and it is made the duty of the register to notify the parties in interest. Either party may appeal to the circuit court, by filing written exceptions, "and the court may thereupon make such order therein as right and justice may require, and order a new appraisement in the manner hereinbefore prescribed, upon good cause shown."

The plaintiff was incorporated on May 11, 1876, and acquired all the franchises and property of a then existing street-railroad company which was incorporated in 1859. The plaintiff, it will be seen, was incorporated a few months prior to the adoption of the present city charter; but thereafter it extended its road from time to time by right acquired under ordinances passed after the present charter took effect. One of these ordinances, which was approved November 3, 1883, contains this clause: "Said Union Depot Railroad

Company shall not acquire any privileges, rights or franchises under this ordinance unless said company files with the city register within sixty days from approval of this ordinance its acceptance in writing of all the provisions of this ordinance, and also of all the provisions of sections 5 and 6 of article 10 of the city charter, and all ordinances now existing or hereafter to be passed relating thereto.'' This ordinance was duly accepted by the plaintiff.

1. Although the plaintiff, the Union Depot Railroad Company, was incorporated prior to the date when the present city charter took effect, still by accepting the ordinance last mentioned, approved November 3, 1883, it agreed to and did become subject to sections 5 and 6 of article 10 of the charter and to all ordinances then or thereafter passed pursuant to those sections. As to those sections of the charter and all valid ordinances enacted to put them in force, the plaintiff stands in the same position that it would had it been incorporated and acquired the right to operate its road on the streets after the charter went into effect. We believe there is no serious dispute as to these propositions; but the plaintiff does question the validity of general ordinance numbered 12652.

2. The plaintiff, in terms, disclaims the right to use the streets now occupied by it to the exclusion of all other street railroads; but it insists: *First*, that the defendant can acquire the right to run its cars over the plaintiff's track only by the exercise of the right of eminent domain; *second*, that the municipal assembly of St. Louis has no power to enact laws for the exercise of that right by one street railroad over the property of another like company; *third*, if the charter attempts to confer such power upon the assembly, then such charter provisions are unconstitutional and void; *fourth*, if the charter is valid and even confers such power, then ordinance number 12652 is invalid, because it does not

give the plaintiff a trial by jury and for various other assigned reasons.

These objections interposed by the plaintiff are all based upon the assumption that the defendant can only acquire the right to run its cars over the plaintiff's track by a process of condemnation. We must, therefore, at the outset determine the question whether the defendant *has* acquired the right to use the plaintiff's track, or whether it *must* acquire that right by condemnation.

By the right of eminent domain, private property is taken for the purpose of promoting the general welfare without the owner's consent. His consent is not necessary; and the damages arising for the property taken do not arise out of contract. But the state in delegating this power to a corporation to take private property for public use may attach conditions that the property taken shall be subject to the use of other corporations doing a like business. Thus it has been held that the legislature, having reserved the power to amend, alter and repeal the charter of a street-railroad company, may authorize another company to use the track of the first corporation, making compensation to that company for the use and wear of its tracks, without making any compensation for the diminution of its profits or of the value of its franchise. *Metropolitan Ry. Co. v. Railroad,* 118 Mass. 290; 12 Allen, 262. The power conferred upon a city to give or withhold its consent to the construction of a railroad within its limits is not limited to saying "yes" or "no." In giving such consent the city may attach conditions. *Pacific Ry. Co. v. Leavenworth,* 1 Dill. C. C. 393.

In *Joy v. St. Louis,* 138 U. S. 1, the board of Forest Park commissioners and two railroad companies made an agreement concerning a right of way through the park, in which it was provided that the railroad companies should permit other railroad companies to use the right of way through the park upon such fair and

equitable compensation to be paid therefor as might be agreed upon by such companies. Subsequently, a third company claimed the benefit of this agreement, and to enforce that claim brought a suit to compel specific performance of the contract. Speaking of this agreement the court said, it "created an easement in the property" of the two companies "for the benefit of the public, which might be availed of, with the consent of the public authorities, properly expressed, by other railroad companies which might wish to use not only the right of way through the park but also that between the park and the Union depot." The court also held that, if the parties did not agree upon the compensation to be paid, a court of equity could fix the amount because the agreement was that the amount should be "fair and equitable."

*Railroad v. Railroad*, 36 Ohio St. 239, was a suit by the plaintiff corporation against the defendant corporation, the city of Cleveland, and others, to enjoin the defendant corporation from running its street cars upon the tracks of the plaintiff. The plaintiff had been granted the right to lay its tracks upon certain streets "under the terms and conditions" of a general ordinance, "or which may hereafter be prescribed by the city council." Thereafter the council gave the defendant corporation the right to run its cars over the plaintiff's tracks on terms of compensation that might be agreed upon by the parties, and, in case of failure of the parties to make any agreement, "such terms of compensation shall be prescribed by the city council." The parties failed to agree, and the council fixed the compensation, which the plaintiff refused to accept, tender having been duly made. The right of the council to prescribe "terms and conditions" in the future, reserved by the grant to the plaintiff, was held to be sufficient to justify the council in giving the defendant the right to run its cars over the plaintiff's tracks. The court, therefore, dismissed the petition. A text-writer

The Union Depot Ry. Co. v. The Southern Ry. Co.

citing this Ohio case, and 20 N. J. Eq. 61, says: "Where the right to lay tracks in streets is granted upon condition that the right to use them by another company may be granted upon compensation to be fixed by the council in case the companies cannot agree, the condition is binding." Lewis on Em. Dom., sec. 490.

By the constitution of this state the legislature can pass no law granting the right to construct and operate a street railroad within any city without the consent of such city. Art. 12, sec. 20. Following this provision, and in accordance with it, the charter of St. Louis provides that any such railroad company shall have the right to run its cars over the track of any other company by paying just compensation therefor. The plaintiff accepted this charter provision and all ordinances then or thereafter passed to put it into force and effect. The plaintiff owns its road and franchises, it is true; but the city has the reserved power in the interest of the public welfare to permit any other company to run its cars over the plaintiff's road; for such is the contract between the plaintiff and the city. The city has exercised this reserved power, and has granted to the defendant the right to use the plaintiff's track. There is, therefore, no necessity for resorting to any process of condemnation to acquire that right, for it is fixed by law and the contract of the parties. There remains nothing more to be done but to ascertain the "just compensation" to be paid to the plaintiff; and that must be ascertained by, and under, the ordinance. The proceeding pointed out by the ordinance for ascertaining the compensation does not involve the exercise of the right of eminent domain. It is simply a proceeding to enforce contract rights, and has none of the elements of a suit to condemn property for public use. These conclusions, we think, are sustained by the authorities before cited.

3. Thus far we have assumed that section 6, of article 10, of the charter, gives the city power to make

rules and regulations for ascertaining the compensation to be paid the plaintiff; but it is earnestly insisted that said section gives the city no such power, and that by the terms thereof the city can only prescribe "rules and regulations" for running the cars of one company over the track of another company. There is plausibility in this reading of the section, but we think such construction is too limited. Other sections of the same article give the assembly full power to regulate the time and manner of running cars in all cases, and it would seem the framers of the charter in the use of the words, "under such rules and regulations as may be prescribed by ordinance," intended to confer upon the assembly additional powers. To give the words quoted any additional force and effect they must be made to qualify the compensation clause. We do not overlook the fact that plaintiff accepted sections 5 and 6 only, but we may look to the whole article to ascertain the meaning of any particular section therein. The article as a whole shows an intention to place the whole matter of regulating street railroads in the hands of the assembly, and we should give the various sections a construction which will carry into effect that intention. Punctuation marks are often guides to the true meaning of a statute, but such marks must yield to an intention disclosed by the statute taken as a whole. Omitting the words "in whole or in part," which may be done without changing the meaning, and dropping some of the commas, the section reads: "Any street-railroad company shall have the right to run its cars over the track of any other street-railroad company upon the payment of just compensation therefor under such rules and regulations as may be prescribed by ordinance, and it shall be the duty of the municipal assembly to immediately pass such ordinances as may be necessary to carry this provision into effect." It is the duty of the assembly to pass ordinances to carry what provision into effect? Plainly, all that precedes the last clause of the

section. With this construction it follows that the assembly may provide a method for fixing the compensation to be paid to the company whose track is used by another company.

4. It is not necessary to discuss in detail the various questions made in the briefs, which are based upon the assumption that ordinance 12652 is one providing for the exercise of the right of eminent domain; for that is not, we have concluded, its true character. There is, however, one objection to the ordinance which may be considered on the theory that the ordinance attempts to do no more than carry out the agreement of the parties. That objection is this, that the city had no power to confer appellate jurisdiction over the award of the commissioners upon the circuit court. Section 22, of article 6, of the constitution, cited in support of the proposition, provides that the circuit court shall have "such concurrent jurisdiction with, and appellate jurisdiction from, inferior tribunals and justices of the peace as is or may be provided by law." This section is not in the way of any law giving the circuit court jurisdiction over the award.

The legislature may authorize a city to institute and prosecute suits in the circuit and other courts. It may even delegate to a city the power to establish municipal corporation courts. *State v. Johnson*, 17 Ark. 407. Indeed the charter of the city of St. Louis not only provides for two police justices, but the assembly is authorized to increase the number. The mere fact that the ordinance gives the circuit court power to review the award is no objection to it. Authorized ordinances, duly enacted, have the force and effect of laws; and the question is simply this, whether section 6 of the city charter, confers power upon the assembly to make the award reviewable by the circuit court. In the *City of St. Louis v. Telephone Co.*, 96 Mo. 626, we cited and approved the rule, as to municipal powers, laid down

in 1 Dill. Mun. Corp. [4 Ed.] section 89, namely: " It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: *First*, those granted in express words; *second*, those necessarily or fairly implied in, or incident to, the powers expressly granted; *third*, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable."

Now, the charter confers upon the city the right to make rules and regulations for ascertaining the just compensation to be paid by one company for the use of the track of another company, and it is then made the duty of the assembly to enact ordinances to carry this provision into effect. The ordinance enacted points out a practical and fair method of fixing the amount. It seems proper that the award should be subject to review by some court competent to determine whether it was made according to correct principles of law. The power to provide for a review by the circuit court is, in our opinion, a fairly implied incident flowing from the power expressly granted, and, therefore, within the second class of cases just mentioned. We must look to the nature, object and purpose of the expressed power, and also the subject-matter of which it treats; and, in doing this, we think it may be said the power expressly granted includes as an incident the power to provide for a review of the award by the circuit court. The ordinance is, therefore, a valid enactment. The judgment of the circuit court is reversed, and the cause remanded to the circuit court with directions to that court to dismiss the petition. BARCLAY, J., absent; the other judges concur. SHERWOOD, C. J., dissents as to paragraph 4.