THE GRAND AVENUE RAILWAY COMPANY, *Appellant*, v. THE PEOPLE'S RAILWAY COMPANY.

Division Two, December 23, 1895.

1. **City:** STREETS: EXCLUSIVE PRIVILEGE. A city can not confer upon a corporation the privilege of using one of its streets exclusively for the business of the corporation.

2. ———: ELECTRIC RAILWAY: USE OF CABLE TRACK: COMPENSATION. In estimating, under the provisions of a city charter relating thereto, the compensation which an electric railway company should pay a cable car company for the use of the latter's tracks, the cost of building the cable conduit should be considered though it can not be used by the electric company and its construction made the cost of the cable road much greater than that of an electric road.

3. ———: ———: ———: ———. Under an ordinance providing that, in a proceeding to fix the compensation one railroad company should pay another for the use of its tracks, the court may make such order as justice may require, the court may require the company desiring the use of the tracks to give a bond for the payment to the other company of one half the cost of renewals of rails and pavement, where the ordinance further provides that either party may once in each two years apply for a readjustment of the compensation to be paid.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*Judson & Taussig* for appellant.

(1) It is submitted that the decree of the circuit court is erroneous in that: *First.* It is based on erroneous view of respondent's property rights in the tracks proposed to be used. *Railroad v. Railroad,* 105 Mo. 562; *Railroad v. Railroad,* 97 Mo. 457; *Railroad v. Railroad,* 111 Mo. 666; *Railroad v. Railroad,* 118 Mass. 290. *Second.* In that it includes in the annual payments exacted of appellant a large amount, about $1,496.16 per annum, as interest on the value of the conduit underneath the respondent's tracks, which appellant does not use and which is retained for the exclusive use of respondent. *Third.* In requiring a bond from appellant for payment to respondent of one half the cost of renewals in the indefinite future when such renewals may be made by respondent, whereas, the adjustment of such expense can not be

equitably determined between the parties until the occasion arises, and then the ordinance provides an ample remedy in a new proceeding.

*G. A. Finkelnburg* for respondent.

(1) Under the law governing proceedings of this sort the appropriator must pay the owner: *First.* For that which he uses. Not merely the rails but the substructure upon which they rest. *Second.* For that which he damages by such use, including wear and tear to any part of the structure whether used or not. *Third.* For that of which he deprives the owner by such use or occupation. Possession and use of the road in all its parts and at all times which the owner enjoyed prior to the joint occupation, and of which he is deprived to the extent the appropriator chooses to occupy the road with cars of its own. (2) The fact that the appropriator has a legal right to appropriate, and does so under a public authority does not affect the question of compensation, because the right to appropriate is a conditional one, viz.: On payment of just compensation. (3) The trial court on appeal from report of commissioners may "make such order as right and justice may require," and the court may make conditional orders, and orders as to what is to be done in the future, and generally adjust and protect the interests of all parties concerned as they themselves might have done by an agreement. *Railroad v. Railroad*, 110 Mo. 510.

BURGESS, J.—These proceedings were instituted by the plaintiff, a street railroad corporation of St. Louis, under provision of ordinance number 12652, of that city, for the purpose of determining the "just compensation, to be paid by plaintiff to the People's

Railway Company, of St. Louis, for the use of the tracks of the latter on Grand avenue from Lafayette avenue to Tower Grove Park, which plaintiff was authorized to use and intended to use in the operation of its own railroad.''

By section 6, article 10, of the city charter of said city it is provided that, ''any street railway company shall have the right to run its cars over the tracks of any other railroad company, in whole or in part, upon the payment of just compensation for the use thereof, under such rules and regulations as may be prescribed by ordinance, and it shall be the duty of the municipal assembly to immediately pass such ordinances as may be necessary to carry this provision into effect.''

An ordinance, number 12652, was enacted under the provisions of the city charter quoted, which conferred on the plaintiff the right to use that part of defendant's track, as before stated, upon paying defendant compensation for such uses under the provision of said ordinance. The ordinance, in case the two companies can not agree upon the compensation to be paid for such uses, provides for the appointment of three commissioners by the mayor, to hear evidence, examine the track, and determine the compensation to be paid, and the time and manner of payment; the award is to be in writing returned to the mayor, whose duty it is to return the same with all the papers connected with the proceedings to the city register. Either party may file written exceptions to the report of the commissioners, and appeal to the circuit court, where the exceptions are to be heard, and such orders made as justice and right may require, or a new appraisement may be ordered upon good cause being shown.

The circuit court after hearing the cause rendered the following decree:

"*First*. The said Grand Avenue Railway Company, plaintiff, is entitled, under general ordinance of the city of St. Louis number 12652 and special ordinance of the city of St. Louis number 17047, given in evidence, to use for the operation of its street railway the following portions of the tracks of said defendant on Grand avenue in the city of St. Louis, namely, beginning at a point in the west track of the said defendant's railway on said Grand avenue, at the intersection of said street and Lafayette avenue in said city, opposite the south curb line of said Lafayette avenue, and running thence south on said west track three thousand, six hundred and sixty-six feet, more or less, to a point about opposite the north line of Tower Grove Park, and thence back northwardly on said west track sixty feet, more or less, to a crossover; thence over said crossover, or cross connecting track, to the east or north bound track of said defendant's railway on said Grand avenue, thence northwardly along said east track to the curve of said track at said Lafayette avenue, thence in a straight line northwardly over and across each curve of each of said tracks, at the intersection of said Grand avenue and Lafayette avenue, making a distance of three thousand, six hundred feet, more or less; with the right, also, to make all proper switches and connections with said tracks with said defendant's railway company, reference also being made for further description to the plans of said plaintiff for said use and occupation approved by the board of public improvements of the city of St. Louis; subject, however, to an obligation on the part of said plaintiff company to pay annually to said defendant company, as just compensation therefor, an amount equal to interest at six per cent per annum on one half the value of said portion of said defendant company's line, including the conduit; also one half the annual taxes

on said part of said defendant's line; one half the annual cost of repairs and maintenance of the tracks and granite paving; one half the cost and expenses, annual, of keeping the said tracks free and clear of snow and ice; one half the cost of renewing the said tracks and granite paving of said portion of said line of defendant's railway, whenever such renewals shall be required, as to which amounts the parties hereto are not and have not been able to agree. Said right of use to be continuous against said defendant company, its lessees and assigns, so long as said defendant or its lessees or assigns shall own, use, or operate the same, subject, however, to the provisions of city ordinance number 12652 and of any and all ordinances of said city governing and regulating such joint use.

"*Second.* That the said plaintiff company shall pay to the said defendant on the foregoing basis, for the use of said tracks, and the connections to be made therewith, by switches and otherwise, the total sum of twenty-six hundred and forty-three and 49-100 ($2,643.49) dollars per annum, in semiannual installments, in advance; the first of the said semiannual installments, namely: Thirteen hundred, twenty-one and 74-100 ($1,321.74) dollars, shall be due and payable when the said plaintiff company begins to make any connection between its tracks and those of the said defendant company, and said payment shall be made semiannually thereafter as long as such connection is continued, provided, however, that the said plaintiff company as a condition of the right to use said tracks, under this present proceeding shall make said connections within the time within which it is required to construct its said railway under the ordinance of the city of St. Louis authorizing it to construct the same, and that it shall make and maintain the switch and crossover connections of its tracks with the

tracks of the said defendant company at each end of the said tracks of the defendant company proposed to be used, at the expense of the said plaintiff company, and the said plaintiff company shall keep switchmen employed, at its own expense, at the said switch connections at each end of the said portions of the said line of the said defendant company proposed to be used, continually during the hours of the day or night when said tracks are operated by both of said railway companies. The foregoing $2,643.49 does not cover renewals or keeping tracks free from snow and ice, which is hereinafter provided for.

"*Third.* Said plaintiff company shall annually pay one half of the cost and expense of keeping said tracks free and clear of snow and ice, within five days after demand, upon an account of said expense being furnished it, the said plaintiff company, by the said defendant company, on April 1, of each year.

"*Fourth.* Said plaintiff shall pay to said defendant, whenever it shall become necessary to renew the said tracks and the granite paving connected therewith one half the cost of such renewals, within twenty days after the renewals shall have been made, and it must pay all of such costs furnished by said defendant company to said plaintiff company, proportioned, however, according to that portion of the life of said tracks and granite paving during which the said plaintiff company may have occupied and used said tracks and paving, that is to say, the plaintiff company shall pay to the defendant company one half of so much of the whole cost of said renewals as may be equal to the fractional part of such entire cost produced by dividing such entire cost by the number of years and fractional parts of a year intervening between the time when plaintiff begins to use said tracks and the time when said renewals were made, plus one half of the number

of years and fractional parts of a year that said tracks shall have already been used by said defendant company prior to the commencement of said plaintiff's use thereof (the defendant company having begun the use of said tracks on the twentieth day of April, 1890) and multiplying the result of said division by the number of years and fractional parts of a year intervening between the time that the plaintiff begins to use said tracks and the time when said renewals are made.

"The said plaintiff company shall also execute and deliver to said defendant company a bond in the sum of $10,000 before attempting its said connections with said tracks, with two or more sufficient sureties to be approved by the court, conditioned that it will pay its said part of the said renewals as provided for in this subdivision of this decree and judgment; with a right, however, on the part of the plaintiff to substitute for said bond or any bond subsequently given another good and sufficient bond, with sureties to be approved by said court; the said substituted bond whenever so approved, to operate as a release and discharge of the pre-existing bond, the said plaintiff company to give five days' notice to said defendant company of its intention to give said substituted bond, which notice shall fix the time and place when said bond will be presented to the court for approval; the right also being reserved to said defendant company to apply to the court from time to time, upon five days' notice to said plaintiff company, for an order requiring a new or additional bond in case any surety shall have died or become insolvent.

"*Fifth.* It is further ordered and adjudged that the said defendant have, and recover of, and from, the said plaintiff its costs and charges herein expended for which let execution issue."

From the judgment and decree rendered, plaintiff appealed.

The following is a statement of the facts by the learned trial judge.

"The People's Railway Company operates its cars by means of cable power and its roadway is so constructed. The Grand Avenue Railway will be operated by electric power with overhead wires and trolley system. Out of this difference in the method of operation arises one of the questions to be determined. For the operation of a cable road it is necessary to construct and maintain under the surface of the roadbed a conduit. For this purpose excavation is made along the entire length of track of sufficient width and depth, and in this is set a hollow wooden form, the outside of which is made to conform to the desired shape and size of the conduit required, and then the entire excavation outside of this form is filled in solid with cement concrete which when settled makes a permanent conduit, in which are placed the pulleys on which the cable runs.

"Owing to the fact that the cable thus operates under the surface of the ground and that the cars are to be operated by it, it is necessary to provide a continuous means of connection between the cars and cable, and this is done by having the top of the conduit made with a narrow longitudinal opening over which are placed two flat iron wires which constitute the 'slot,' through which the 'grip' is extended into the conduit in such manner as to readily take hold and let go the cable and thus to operate the cars. The necessity of this 'slot' prevents the use of the ordinary ties and stringers used in the construction of the street railroad operated by electricity or horse power, and to supply their place iron yokes are used in the construction of the cable roadway. These are set in the excavation

before the concrete is filled in, and are so made that they furnish a convenient place upon which the slot wires can rest and be securely fastened. Such a roadway is very expensive, and the defendant's roadway cost at the rate of $12 per running foot of single track. The construction of a track for an electric roadway in the city would not be over $15,840 per mile, or $3 per running foot.   *   *   *''.

I.   Plaintiff's first contention is, that the decree rendered by the circuit court is erroneous, in that it is based on an incorrect view of defendant's property rights in the tracks proposed to be used. Especially is it claimed that the court erred in respect to two matters embraced in its decree; *first,* in including the conduit underneath the tracks in the determination of the value on which interest is to be paid as annual rental, and its requirement concerning payment of renewals of the tracks and paving.

As bearing upon these questions it may be conceded that the defendant has no exclusive franchise or property right in its occupancy of any street on which its tracks have been laid. The city has no power or authority to confer upon any corporation the exclusive right to use one of its streets for its own business. *Railroad v. Railroad,* 111 Mo. 666, and *Railroad v. Railroad,* 97 Mo. 457. It would seem, then, to logically follow, that the only right defendant has in the street is the right to occupy and use the same for the purpose granted, subject, however, to the right of the city to permit any other company to run its cars over defendant's road, as the public convenience might require.

In speaking of the rights of parties situated similar to the parties to this suit in *Railroad v. Railroad,* 105 Mo. 562, the court said: "Plaintiff owns its road and franchises, it is true; but the city has the reserved

power in the interest of the public welfare to permit any other company to run its cars over the plaintiff's road; for such is the contract between the plaintiff and the city. The city has exercised this reserved power, and has granted to the defendant the right to use the plaintiff's track. There is, therefore, no necessity for resorting to any process of condemnation to acquire that right, for it is fixed by law and the contract of the parties. There remains nothing more to be done but to ascertain the 'just compensation' to be paid to the plaintiff; and that must be ascertained by, and under, the ordinance. .The proceeding pointed out by the ordinance for ascertaining the compensation does not involve the exercise of the right of eminent domain. It is simply a proceeding to enforce contract rights, and has none of the elements of a suit to condemn property for public use.''

But because defendant possesses no exclusive right to the use of the street it does not follow that its rights are not paramount to those of plaintiff, defendant having first occupied the street under a contract with the city.

It is true that plaintiff is granted the same right to run its cars on Grand avenue from the same considerations that originally induced the grant of defendant's franchise; and that it is required to make use of defendant's tracks between Lafayette avenue and Tower Grove Park, but it can make no possible difference whether such right be public or private, as the only way that it can be exercised is by the payment of just compensation as provided by the city charter.

There was nothing allowed defendant in this case for diminished profits on account of competition in carrying passengers, or for the value of its franchise. It is, therefore, unnecessary to pass on those questions.

II.   The court allowed defendant an amount equal to interest at six per cent per annum on one half the value of that portion of its road occupied by plaintiff including the conduit, and plaintiff claims that as it only uses defendant's tracks, and does not use directly or indirectly any part of the conduit or underground structure which defendant uses for the purpose of cable railroad underneath the tracks, it should not be required to pay anything therefor, and that the court. erred in including that item in its estimate of the amount to be paid defendant as just compensation, and in including said amount in the judgment rendered.

It is conceded by counsel for plaintiff that if the operation of its cars over the tracks caused any *damage* to the conduit, such damage would be a proper element of compensation, and that in so far as the yokes perform the office of ties in supporting the tracks, the value of ties should be included in the amount upon which interest is computed.

The fault of the argument is, the want of premise upon which to base it.   No ties were used in the superstructure of the road, and, in estimating the just compensation to be paid, we must take the conditions. as we find them.   The phrase "just compensation," as used in the charter of the city and its ordinance has. the same meaning which that phrase has when used in the federal and state constitutions with respect to the exercise of the right of eminent domain, and when thus used "means a fair and full equivalent for the loss sustained by the taking for public use."   Lewis on. Eminent Domain, sec. 462, and authorities cited.   In *Bigelow v. Railroad*, 27 Wisconsin, 478, it is said that it "consists in making the owner good, by an equivalent in money, for the loss he sustains in the value of his property by being deprived of a portion of it."

While plaintiff does not use the conduit, it does deprive defendant of its use to the extent that its tracks are occupied by plaintiff's cars, because the cars of the respective parties can not occupy the same portion of the tracks at the same time. The conduit is an integral part of the roadway as constructed and used by defendant, and there would be no justice in allowing plaintiff to use the tracks, and thereby deprive defendant of the use of the conduit to any extent, without making compensation therefor. Certainly plaintiff would not be permitted to occupy one of defendant's tracks, or rails, and thereby at the same time deprive it of the use of the other track or rail, without making just compensation for the one not used. There is no difference in principle in occupying the tracks, and, during such occupation, and by reason thereof, depriving defendant of the use of the conduit, than in occupying one track or rail, and by reason thereof at the same time depriving defendant of the use of the other. In either case compensation should be made. There was no compulsion on the part of plaintiff to occupy defendant's tracks, and the fact that the superstructure was more costly, and some parts of it unnecessary, to the operation of plaintiff's cars, affords no just reason why it should not compensate defendant, not only for that which it does use, but also for that of the use of which it deprives defendant. This is the measure of the compensation to which defendant is entitled, and nothing short of it would be "just compensation."

III. It is further contended that the court committed error in requiring bond from plaintiff for payment to defendant of one half the costs of future renewals, whereas the adjustment of such expenses can not be equitably determined between the parties until the occasion arises, in which event the ordinance provides an ample remedy in a new proceeding.

By section 1265 of said ordinance it is provided as follows: "And either party may apply for a readjustment of the terms of compensation once in each period of two years, to be determined as herein prescribed." This provision of the ordinance is based upon the idea that a previous adjustment has been made; otherwise, there could be no readjustment.

The trial court adjusted all elements of compensation and damages, and provided for the payment thereof. And by the provision of said ordinance, either party may apply to the mayor of the city for a readjustment of the terms of the compensation, once in each two years.   The court adjusted the compensation to which defendant is entitled in a way that seems eminently fair and just between the parties, or as nearly so as possible under the circumstances.

In a written opinion the court said: "It is doubtless true that some inconvenience may result from the requirement of a bond to cover the payment by the plaintiff of its share of renewals of rails and pavement which will be required in the course of time.   But it seems to the court that this is the fairest and most equitable manner of adjusting the matter, which is involved in much difficulty as heretofore pointed out."

Power to require the bond was conferred on the court by section 1268, of the ordinance, which authorizes the court "upon the trial to make such order therein as right and justice may require." Moreover, in the absence of any such ordinance, the court had the inherent power under the circumstances of the case to require such a bond, if the equity and justice of the case required it.

From these considerations it follows that the judgment should be affirmed.   It is so ordered.   GANTT, P. J., and SHERWOOD, J., concur.