GRAND AVENUE RAILWAY COMPANY v. LINDELL RAILWAY COMPANY, Appellant.

In Banc, March 21, 1899.

1. **Street Railway**: RIGHT TO USE OTHER ROAD'S TRACKS: CONDEMNATIONS.   Where a street railway company accepts the provisions of the St. Louis charter, which provide that any street railroad company shall have the right to run its cars over the track of any other such company by paying just compensation therefor, such acceptance creates a contract between the city and such company, and it is unnecessary to resort to condemnation proceedings to acquire a right of user, thus already secured by contract. (Following Union Depot Railroad Co. v. Southern Railway Co., 105 Mo. 562, and Grand Avenue Railway Co. v. People's Railway Co., 132 Mo. 34.)

2. ———: ———: JURISDICTION OF CIRCUIT COURT.   Under that charter, the city through its municipal assembly has the power to make rules and regulations for ascertaining the compensation to be paid by one company to another for the use of its tracks, and also to provide by ordinance for the review of the award by the circuit court.

3. ———: ———: MEASURE OF COMPENSATION. The "just compensa-
tion" in such case must be based on the value of the tracks used by
plaintiffs at the time the user began, and not the original cost of con-
structing them.

4. ———: ———: RIGHT TO SELECT SWITCHMEN AT CONNECTIONS.
Where the ordinance requires the road desiring to use the other's
tracks to construct and maintain the connections with its tracks, and
the whole cost of paying the switchmen at the connections is cast
upon it, it has the right to select such switchmen.

*Appeal from St. Louis City Circuit Court.*—HON. LEROY B.
VALLIANT, Judge.

AFFIRMED.

BOYLE, PRIEST & LEHMANN for appellant.

(1)    The circuit court was without jurisdiction in the
matter. Constitution, art. VI, secs. 1 and 22; State ex rel. v.
Walsh, 69 Mo. 408; State ex rel. v. McKee, 69 Mo. 504; St.
Louis v. Laughlin, 49 Mo. 559; Ex parte Allis, 12 Ark. 101;
State ex rel. v. Anthony, 65 Mo. App. 543; Farley v. Hamil-
ton Co., 126 Ind. 468; Drum v. State, 2 Ark. 229; Rozier
v. Williams, 92 Ill. 187; In re Bauer, 112 Mo. 231; State ex
rel. v. Woodson, 128 Mo. 497; Tapley v. McPike, 50 Mo. 589;
Lamb v. Heim, 56 Mo. 420; Hughes v. Burrois, 85 Mo. 660;
Garred v. Doniphan, 10 Mo. 161; Zalle v. Laclede Ins. Co.,
44 Mo. 530; Curry v. Lockey, 35 Mo. 389; Holmes v. Shep-
ard, 49 Mo. 600; Dillon, Mun Corp. (4 Ed.), secs.
21 and 427; Shafer v. Mumma, 17 Ind. 331;
Meagher v. Story Co., 5 Nev. 244. (2)    The court
erred in holding that "just compensation" for the use of de-
fendant's tracks was made by allowing merely one-half the
expenses of repair and maintenance, one-half of the annual
taxes and interest at six per cent per annum on one-half the
original cost of construction of the tracks appropriated and
used by the plaintiff company. Railroad v. Railroad, 132
Mo. 34; Boston, etc., Co. v. Western, 14 Gray, 253; Bigelow

v. Railroad, 27 Wis. 478; Lewis on Em. Dom., 462. (3) The court erred in giving control of the switchmen at Finney and Lucas streets to the plaintiff, and in giving to plaintiff the control of the switches at said streets. Railroad v. Railroad, 132 Mo. 34.

F. N. Judson for respondent.

(1) The circuit court had jurisdiction over the subject-matter. This was expressly adjudged in Union Depot Railroad Co. v. Southern Electric Railway Co., 105 Mo. 562, and followed in Grand Avenue Railway Co. v. People's Railway Co., 132 Mo. 34. See, also, State ex rel. v. Wood, 142 Mo. 127. A constitutional charter may directly, or by ordinance enacted thereunder, confer jurisdiction upon the circuit court for the determination of the just compensation in condemnation suits and in cases analogous thereto, as in the case at bar. Kansas City v. Marsh Oil Co., 140 Mo. 458. The authorized ordinances of a municipality have, in the territory, the force of laws passed by the General Assembly. Taylor v. Carondelet, 22 Mo. 112; Carondelet v. Lanan, 26 Mo. 461; Huth v. Carondelet, 26 Mo. 466; St. Louis v. Foster, 52 Mo. 513; State v. Clark, 54 Mo. 17; State v. DeBarr, 58 Mo. 397; Moore v. Cape Girardeau, 103 Mo. 470; Hopkins v. Mayor of Swansea, 4 M. & W. 621; 1 Dillon on Mun. Corps. (4 Ed.), sec. 308; State ex rel. v. Meier, 45 S. W. Rep. 306. (2) Counsel is in error in assuming that the decree is based upon the original cost of the tracks of appellant. On the contrary, the fact ascertained and found by the court was the value of the tracks at the time of the hearing. There could be no recovery or allowance on the basis of an exclusive franchise. Grand Ave. Railroad Co. v. People's Railway Co., 132 Mo. 34; Union Depot Railroad Co. v. Railroad, 105 Mo. 562; Railroad v. Railroad, 111 Mo. 666; Railroad v. Railroad, 118 Mass. 290. (3) The court below properly excluded testimony as to the incidental injuries resulting from the

connections, i. e., from the crossings of appellant's track, respondent being required to keep and maintain the connections at its own expense. The right of crossing is a constitutional right, and there can be no recovery for incidental "inconvenience," "interruption" and "jolting." Article VII, secs. 13, 14 and 20, Constitution; Railroad v. Railroad, 111 Mo. 680; Railroad v. Railroad, 97 Mo. 457; Railroad v. Railroad, 118 Mo. 599; Railroad v. Railroad, 132 Mo. 43; Lewis on Em. Dom., sec. 268; Booth on Street Railway, sec. 114. (4) The court properly gave respondent the control of its own employees, for whom it was responsible, whom it was obliged to employ, to wit, the switchmen at the points of connection. This was strictly in compliance with the ordinance, section 1259, that the company using the tracks shall "construct and keep its connections" with the tracks of the owning company. This was in accord with the decree in the People's Railway case, approved by this court as "eminently fair and just." (132 Mo. 34.)

GANTT, C. J.—The plaintiff and the defendant are corporations under the laws of Missouri, each owning and operating a street railway in St. Louis. The defendant corporation owns a line with a double track on Grand avenue in said city between Lucas and Finney avenues, a distance of some fifteen hundred feet, and operates its cars thereon by overhead electric trolley. The plaintiff, on the other hand, is authorized by an ordinance of the city to construct its tracks on Grand Avenue until it reaches that portion of the street occupied by defendant's tracks, and is authorized to connect its tracks with defendant's at the intersection of Grand and Finney avenues and use the same to Lucas Avenue.

The city of St. Louis is governed in its municipal affairs by a charter adopted on the twenty-second day of October, 1876, by the voters of said city. It was framed by authority

of sections 20, 21, 22, 23, 24 and 25 of article IX of the Constitution of Missouri, which provided that when adopted by a majority of the voters it should be "the organic law of the city" and should take the place and supersede the then charter of the city and all amendments thereto.

The tenth article of the charter relates to and defines the authority of the city over street railroads. It gives the municipal assembly of said city power by ordinance to determine all questions with regard to street railways, whether such questions involve the construction of such railroads, granting the right of way, or regulating and controlling them after their completion, and provides, among other things (sec. 1), that thereafter "no street railroad shall be incorporated or built in the city of St. Louis except according to the above and other conditions in this charter." By the sixth section of said article 10 it was expressly provided that "any street railroad company shall have the right to run its cars over the track of any other street railroad company, in whole or in part, upon the payment of just compensation for the use thereof, under such rules and regulations as may be prescribed by ordinance, and it shall be the duty of the municipal assembly to immediately pass such ordinances as may be necessary to carry this provision into effect."

The Constitution of Missouri, article XII, section 20, further provides that "no law shall be passed by the General Assembly granting the right to construct and operate a street railroad within any city, town, village or on any public highway, without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by such street railroad; and the franchises so granted shall not be transferred without similar assent first obtained."

The municipal assembly afterwards passed an ordinance, number 12,652, in obedience to section 6, article 10, of the charter, which authorized any street railroad company to run

its cars over the tracks of any other street railroad company on any street as it may by ordinance be authorized so to do, upon the payment of just compensation to be ascertained under the rules in said ordinance prescribed. Section 2 of said ordinance is in these words:

"Sec. 2. When any street railroad company shall desire to operate a line of street cars over the track of any other street railroad company, or part thereof, as provided in the first section of this ordinance, and agreement can not be had between such companies as to the compensation to be paid by the company so desiring, said compensation shall be ascertained by a commission of three disinterested freeholders of the city of St. Louis, to be chosen and appointed in the following manner, to wit: The company desiring to use said track may make written application to that effect to the mayor of said city, accompanied by plans and specifications showing the extent of the track it desires to use, first giving ten days' notice in writing to the ralroad company whose track it is designed to use, for the time and purport of such application. On receipt of the same, with evidence of notice as aforesaid, the mayor shall forthwith give notice to each of said companies to report to him in writing within ten days thereafter the name and address of one disinterested freeholder of the city of St. Louis to act as its chosen commissioner. Upon the expiration of the ten days aforesaid the mayor shall forthwith appoint a third disinterested freeholder of the city of St. Louis to act as commissioner, and shall also appoint one such freeholder to represent either of such companies which shall have refused or neglected to appoint a commissioner within the time aforesaid. Thereupon the mayor shall forthwith give notice to the commissioners so appointed of their appointment and shall turn over to them all papers in his possession relating to the matter in controversy, and in case of vacancy in such board of commissioners, caused by death or refusal to serve of any

of said commissioners, or for any other cause whatsoever, the mayor shall appoint a commissioner to fill such vacancy. All the commissioners provided for under the provisions of this ordinance shall be freeholders, resident of the city of St. Louis, and shall not be interested in any manner as stockholders, bondholders, lienholders, or officers or employees of either of the street railroad companies in question. When appointed, said commissioners shall proceed to determine the compensation to be paid and the time and manner of its payment; provided that in case one or more street railroad companies shall thereafter be authorized to operate, and do cause to be operated, a line of street railroad cars upon said track, the compensation paid by the company or companies already occupying said track may upon application of either of said companies to the mayor, be reviewed and readjusted by a commission of three disinterested freeholders, chosen and appointed in the manner herein prescribed. And either party may apply for a readjustment of the terms of compensation once in each period of two years to be determined as herein prescribed."

The plaintiff corporation having, as already said, obtained permission by ordinance to run its cars on defendant's tracks, instituted this proceeding to have the compensation which it should pay defendant fixed in accordance with ordinance number 12,652. Commissioners were appointed as required by the ordinance and a majority made a report awarding the defendant company $5,297.60 per annum, payable in quarterly instalments by the Grand Avenue company. The award further specified that the Lindell company should have the right of way, keep the tracks in repair and renew the same and should make the connections between the tracks of the Grand Avenue Railway Company and its own, using however the material to be provided by the Grand Avenue Railway Company, the Grand Avenue Company paying the Lindell for doing the work. The Lindell was required to

maintain the connections, after made, and keep twenty hours out of each twenty-four, one switchman at Lucas and Grand avenue, and one at Finney and Grand Avenue junctions. The items of the award seem to have been $3,107 rental, and $2,190 as cost of keeping four switchmen at $1.50 per day.

Both parties filed exceptions. The papers were duly filed in the circuit court, and both sides prayed the circuit court to review the award and make such orders as right and justice might require, and for a new appraisement. A jury was waived and the cause heard by the circuit court.

Three propositions are urged for reversal.

I. The defendant insists that the circuit court was without jurisdiction in the matter.

More specifically stated the contention is, that the charter of the city of St. Louis could not confer upon the circuit court the power to hear and determine the just compensation which the plaintiff company should pay the defendant company for the use of its tracks.

Section 22 of article VI of the Constitution of Missouri ordains that "the circuit court shall have jurisdiction over all criminal cases not otherwise provided for by law; exclusive original jurisdiction in all civil cases not otherwise provided for; and such concurrent jurisdiction with and appellate jurisdiction from inferior tribunals and justices of the peace as is or may be provided by law."

This is not a new question in this court. It was raised, discussed and decided by this court in the case of The Union Depot Railroad Company v. The Southern Railway Company, 105 Mo. 562, at the April term, 1891, of this court.

In that case it was held that where a street railway company accepted the provisions of the charter of St. Louis which provided that any street railroad company shall have the right to run its cars over the track of any other such company by paying just compensation therefor, such acceptance created a contract between the city and such company, and it was

wholly unnecessary to resort to condemnation proceedings to acquire a right of user already secured by contract. It was further ruled that under the freeholders' charter of St. Louis, the city through its municipal assembly, had the power to make rules and regulations for ascertaining the compensation to be paid by one company to another for such user of the other tracks, and it was entirely competent to provide for the review of the award by the circuit court.

That decision was reached after the fullest argument and most mature consideration, both in Division, and by the Court in Banc, Judge SHERWOOD dissenting. Since that time the same charter and ordinance provisions came before Division No. 2 of this court, and was enforced, Judge SHERWOOD concurring, so that the decision may be said to have received finally the concurrence of all the judges who sat in the first case. [Grand Avenue Railway Co. v. People's Railroad Co., 132 Mo. 34.]

When it is considered that the people of the State have confided the subject-matter of street railways in her streets and highways, exclusively to the city, that such control and regulation is a matter strictly within municipal regulation, the ordinances of a city, adopted in pursuance of its charter, granted by the State, have the force and effect of laws within said city, and are binding upon all persons who come within the scope of their operation, so long as they are not in conflict with the Constitution and are in harmony with the general laws and policy of the State; and as we find nothing in this ordinance which militates against the Constitution or general laws of the State, we see no reason for departing from the judgment announced in the Union Depot Railroad Co. v. The Southern Railway Co., 105 Mo. 562.

This court in St. Louis v. Foster, 52 Mo. loc. cit. 515, speaking of city charters, quoted Judge SCOTT's language in Taylor v. Carondelet, 22 Mo. 112, with approval, as follows: "Their charters are their constitutions, which authorize

the councils to act, and a city council is a 'miniature general assembly, and their authorized ordinances have the force of laws passed by the legislature of the State." In St. Louis v. Boffinger, 19 Mo. loc. cit. 15, this court said: "When an ordinance is passed under this grant of power, it is in force by the authority of the State, and is to be interpreted and executed as if it had been passed by the General Assembly." The same doctrine was re-announced and followed in Jackson v. Grand Ave. R'y Co., 118 Mo. loc. cit. 219, and Kansas City v. Marsh Oil Co., 140 Mo. 458.

The ascertainment of the compensation to be paid by one company to another under the charter and ordinance in this case, is merely incidental to the paramount right and duty of the city, as a municipality, to provide for the welfare and good government of the community by facilitating the transit of the public over its thoroughfares. It simply provides that either or both parties if dissatisfied with the award for compensation may take the matter into the circuit court, a tribunal already established by the Constitution, and having inherent powers to determine controversies of this character, either originally or in its appellate jurisdiction from inferior tribunals "provided by law."

We hold the ordinance in question is a provision "by law" in the meaning of the Constitution.

We adhere to the decision in Union Depot Railroad Co. v. Southern Railway Co., 105 Mo. 562, subsequently reaffirmed in Grand Avenue Railway Co. v. People's Railroad Co., 132 Mo. 34.

II. The next material contention is that the circuit court erred in holding that just compensation for the use of defendant's tracks was made by allowing one-half the expenses of repairs and maintenance, one-half of the annual taxes and interest at six per cent per annum, and one-half of "the original cost" of construction of the tracks used by plaintiff.

The answer to this is that the evidence was directed to the value at the time the user began, and not the original cost, and the decree itself provides that the interest shall be paid on one-half of the value, not cost, and the court found the value to be $11,902.75.

This was the ruling in Grand Avenue v. People's Railway, 132 Mo. 34. This assignment of error is not supported by the record.

III. Finally error is charged to have been committed in requiring the Grand Avenue company to keep the switchmen who make the connections at Finney and Lucas avenues. Both parties concede that the charge of paying these switchmen under the ordinances was properly devolved upon the Grand Avenue company. From this point, however, there is a wide divergence in the contentions of counsel.

The ordinance, section 1298, provides: "The company using the track or parts of the track of another company under the provisions of this and the next five sections shall run its cars while on said track at the same rate of speed as the cars of the company owning said track and shall construct and keep connections with the track of that company, so as not to hinder or delay the cars of the company owning the track."

Learned counsel for defendant insists that because in the ownership of its tracks it has a paramount right therein to that of plaintiff, it should be allowed to select and control these switchmen, on the principle that with the higher right goes the higher responsibility and it should be accompanied with the higher authority.

On the other hand counsel for the plaintiff argues from the requirement of the ordinance requiring plaintiff company to construct and keep its connections with defendant's tracks, that as the law placed both the responsibility of making the connections and keeping them upon plaintiff, it justly gave it also the concomitant power and control.

It seems to us the ordinance was properly construed. The duty of keeping the connections justified the court in requiring switchmen to be employed to handle the switches, and as the whole cost of paying the switchmen was thrown upon plaintiff along with responsibility of keeping the connections, the right to select the agents, for whose conduct it was responsible, and whose wages it must pay, was properly conferred upon it.

No other objections being urged against the decree and no error appearing in those assigned, the judgment is affirmed. SHERWOOD, BURGESS, ROBINSON, BRACE, MARSHALL, JJ., concur; VALLIANT, J., takes no part in the decision.