[Argued March 21, 1893; decided April 19, 1893.]

## GARROW *v.* NICOLAI.

[ S. C. 32 Pac. Rep. 1036.]

1. ARBITRATION AND AWARD — AUTHORITY OF ARBITRATORS.— An award, to be effective as a bar to a subsequent suit over the same matters, should follow the terms of the submission — it should cover everything submitted, but nothing more; though in case the award does cover matters not within the terms of the arbitration agreement, the excess will be separated, if possible, and the award upheld as to the part that is good.

2. PARTNERSHIP ACCOUNTING — AWARD ON ARBITRATION.— An award which undertakes to state an account between two partners under an agreement authorizing the arbitrators to examine the books, accounts, and writings of a firm, and determine the profits or losses, the share owned by each of the partners in the plant, and the other profits of the business, and providing that the award shall be binding as a correct statement of the profits or losses of the firm, and of the share or interest of

each partner, the arbitration being made for the purpose of enabling either partner to purchase the interest of the other — is not consonant with the submission, and is no bar to an action by one partner against the other for a dissolution of the partnership and an accounting.

3. ARBITRATION AND AWARD — ESTOPPEL.— An award will not operate as a bar to an action wherein there appear other facts and issues not contemplated in the original submission or included in the award.

Multnomah County: LOYAL B. STEARNS, Judge.

Suit by Eugene Garrow against Adolph Nicolai for dissolution of a partnership and an accounting. Decree for plaintiff and the defendant appeals. Modified.

*Albert H. Tanner* ( *John H. Mitchell & Son* on the brief), for Appellant.

*Jas. F. Watson* ( *Edw. B. Watson,* and *Ben B. Beekman* on the brief), for Respondent.

This is a suit by Eugene Garrow against Adolph Nicolai for an accounting. The complaint alleges that in March, 1887, plaintiff and defendant entered into a copartnership under the firm name of Nicolai & Garrow, for the purpose of purchasing and erecting a sawmill in Columbia County, purchasing timber, and running and operating said mill in manufacturing lumber for the benefit of the copartnership. The complaint further alleges that the firm proceeded immediately to carry on said business, purchased machinery, and manufactured lumber from about August 1, 1887, until about the first of May, 1889; and that such lumber was shipped to said Nicolai at Portland, Oregon, and sold by him for the benefit of said firm; that the accounts, when correctly stated, show that large profits were made in said business, insomuch that after paying in full for said mill and plant, the cost of procuring timber, and of manufacturing it into lumber, and all expenses connected therewith, out of the proceeds of the sale of lumber so shipped to Nicolai, there remains a balance of assets belonging to the said firm of about five thousand one

hundred and seventy-eight dollars and forty-nine cents, besides the said mill and plant, valued at about seven thousand five hundred dollars; that the firm owes about two thousand and forty-seven dollars and sixty-nine cents, leaving as the net profits of the business about ten thousand six hundred and thirty dollars and eighty cents. The plaintiff afterwards, by leave of the court, filed a supplemental complaint, wherein he alleged that on the sixth day of June, 1889, the mill and plant were sold by the sheriff of Columbia County, under executions issued upon two judgments of the circuit court of said county against the said firm for sums aggregating eight hundred and forty dollars and ninety-five cents; that at said sale Nicolai procured one W. H. Conyers to buy in the mill and plant for him, and furnished him with money for that purpose, and that afterward he had the apparent title transferred to defendant James J. Allord, who paid no consideration for it, but took and held it in trust for Nicolai, who afterwards removed said mill from the state, sold it and converted the proceeds thereof to his own use.

The answer denies that the business yielded a profit; that the amount received for lumber by Nicolai was any greater than twenty-nine thousand nine hundred and sixty-seven dollars and twenty-four cents, and denies that the mill was worth more than four thousand dollars; and also denies the allegations of the supplemental complaint, except that the mill and plant were sold. The answer then sets up the following separate defense: That upon the sixth day of May, 1889, plaintiff and this defendant Nicolai mutually agreed in writing to submit their differences arising out of said copartnership, as set forth in the pleadings herein, to arbitration, which agreement was, in substance, as follows: That the plaintiff and defendant, "as copartners by the firm name of Nicolai & Garrow, have been engaged in purchasing, erecting, and operating a steam sawmill and plant in Columbia County, Oregon,

and in purchasing timber, and manufacturing lumber at said mill, and selling said lumber upon equal terms of division of profits and losses between us in said venture and business, and are unable to agree between ourselves as to what, if any, profit has been realized, or what, if any, losses have been suffered, by said copartnership, as shown by the books, bills, accounts, and writings pertaining to said business, said Nicolai claiming that the general result of said business has been attended with loss, and said Garrow claiming that not only the mill, and plant connected therewith, have been paid for by profit from said business, but that other and further profits have been made therein by said firm.

"Now, therefore, in consideration of one dollar, by each of us paid to the other, the receipt whereof is hereby acknowledged, and of the agreement of each with the other to stand to and abide by such statement, * * * it is hereby contracted and agreed between the said parties hereto that Mr. Chas. H. Richards and Chas. H. Jewett, accountants, of Portland, Oregon, shall, as arbitrators, inspect and examine said books, bills, contracts, accounts, and writings belonging to said copartnership, and in anywise connected therewith, or relating to the said business, and said Jewett and Richards shall ascertain, determine, and state therefrom the profits or losses of said firm of Nicolai & Garrow in said business; and shall also determine the share now owned by each of said partners in said mill and plant, and other profits, if any, of said business; and if the said Richards and Jewett shall be unable to agree between themselves as to a correct and true statement thereof, that then they two shall select another, or third, competent accountant and arbitrator, to be chosen and agreed upon by themselves, and that such account, showing, award, and statement as may be agreed upon by said three arbitrators, or any two of them, shall be final and conclusive between, and binding upon, the parties hereto,

as a correct and true statement and showing of the profits or losses, as the case may be, of said copartnership of Nicolai & Garrow in said business, and of the share and interest now owned by each of said copartners in said mill and plant, and in any money or further profit, if any, belonging to said firm. * * * It is further agreed that either partner desiring to purchase such interest of the other in said mill and plant, and remaining property and assets of said firm, as so shown, shall be at liberty to do so by paying to the selling partner the value of his said interest, as so ascertained and determined by said arbitration; or if each partner should desire to purchase rather than sell, then each shall have the privilege of bidding such amount over and above the valuation of the interest of the other, as fixed by said arbitrators, as the party bidding shall be willing to pay therefor; and the party bidding the greater amount over such fixed valuation shall be the purchaser, and the other party is hereby bound to sell to him at such offer."

Upon the twenty-second day of May, 1889, the arbitrators in said submission called to their assistance T. T. Struble, as the third arbitrator; and on or about the first day of August, 1889, the arbitrators made their award, which, in substance, finds that "on June 5, 1889, the property belonging to Nicolai & Garrow in Columbia County, Oregon, was sold to satisfy judgments against the said firm, and that the property so disposed of is represented in the ledger accounts under the heads of machinery, fixtures, and live stock, and that the cost of said property, the amount received for the same, and the loss thereon are as follows: Machinery, three thousand two hundred and thirty-four dollars and fourteen cents; fixtures, one thousand and eighty-six dollars and seventy-one cents; live stock, one thousand two hundred and sixty-seven dollars; total, five thousand five hundred and eighty-seven dollars and eighty-five cents; net total from the sale of same as returned by the county clerk of Columbia County, Oregon, one

thousand and thirty-seven dollars, leaving a loss of four thousand five hundred and fifty dollars and eighty-five cents." The arbitrators found that the firm has an interest in a skid road, and that the value of said road to either of the partners using it would be one hundred dollars for the unexpired term of the lease, and th..t the firm had an interest in a plank road, leading from the mill to the wharf, and that the value of it to either of the parties using it would be one hundred dollars; and that the value of the firm's interest in a certain messhouse, sleeping quarters, etc., is fifty dollars. Then follows a summary of the cash received during the years 1887 and 1888, amounting in total to twenty-nine thousand nine hundred and seventy-one dollars and sixty-four cents, and cash disbursed for the same years amounting to thirty-two thousand seven hundred and fifty-seven dollars and forty-four cents, showing that the amount disbursed by A. Nicolai, in excess of the amount received for those years, was two thousand seven hundred and eighty-five dollars and eighty cents. The award charges one half of this excess to Garrow, and, after taking into account some other items of debit and credit, the arbitrators found that the plaintiff is indebted to A. Nicolai in the sum of one thousand three hundred and fifty-six dollars and fifty-four cents.

Plaintiff demurred to the defense setting up the arbitration and award, and the demurrer was sustained, and that defense excluded, and plaintiff filed a reply to the remaining new matter in the answer. The cause having been referred to Geo. A. Brodie, Esq., he reported in favor of the plaintiff and a decree was so entered. Defendant appeals. Modified.

Mr. CHIEF JUSTICE LORD delivered the opinion of the court.

1. It is claimed that the court erred in sustaining the demurrer to the plea of an arbitrament and award, because

the award is a conclusive defense to the suit.  This is challenged on the ground that the award does not follow the submission, and that if it did, it would not cover the issues in this suit.  The facts show that the suit was brought originally to obtain a dissolution of the copartnership, and an accounting of its affairs; that the partners disagreed, the plaintiff claiming that the business had been profitable, and the defendant claiming that it had been unprofitable, and attended with loss; that for the purpose of settling their differences in this regard, they entered into the arbitration agreement set out as a defense; that thereafter, the mill and its appurtenances were sold under execution, and bought by one Conyers, under the circumstances of fraud alleged in the supplemental complaint, and denied in the answer, thus forming an additional issue.  To sustain the contention of the defendant it is essential to the validity of the award that it should be consonant with the terms of the submission, and that it should be coëxtensive with the issues involved, in order to operate as a bar to the suit.  It is a fundamental principle that the award must be consistent with the submission, and that it must not extend to persons or things which are not embraced within its terms.  Mr. Caldwell says: "It is one of the requisites of a valid award that it be consonant to the submission," and it "must not extend to persons or things beyond the scope of the submission": Caldwell, Arbitration, 226–7.  The power of the arbitrators is derived entirely from the submission, and any award which they may render in excess of the power conferred upon them, will be void.  The submission is the measure of their authority, and necessarily they must confine their judgment to the matters submitted by it, and not extend it to those not comprehended within its scope.  In *Carnochan* v. *Christie*, 11 Wheat. 446, it was held that an award must decide the whole matter submitted to the arbitrators, and that it must not extend to matters not embraced in

the submission. In commenting upon the requisites of a valid award, GILCHRIST, C. J., said: "It is that the award shall embrace all the matters of dispute submitted, or, in other words, shall follow the terms of the submission, so that the parties may have accomplished all the substantial purposes they may be supposed to have had in entering upon the reference." An award which puts an end to the original controversy is a conclusive bar to an action on the original matter. It has the same effect as a judgment, and concludes the parties to the controversy effectually from litigating the same matters anew. It is in the nature of a judgment, and ought to be decisive, for if it does not determine the matter it becomes the cause of a new controversy: Bacon's Abridgment, 331; *Colcord* v. *Fletcher*, 50 Me. 398. "The decision, if valid," says FOSTER, J., "is a judgment, or in the nature of a judicial decision, rendered by agreement of the parties; and it is to be enforced as if the parties had agreed, without arbitration, that their rights are what the arbitrators have decided": *Truesdale* v. *Straw*, 58 N. H. 218. There is, and ought to be, no difference in the effect of an adjudication, as a bar to a subsequent suit for the same cause, whether it is pronounced by judges selected by the parties or appointed by the state. "In either case," GARDNER, C. J., said, "every consideration of public policy requires that after the parties have been once fully and fairly heard further litigation as to the same matter should cease, and no satisfactory reason can be assigned why a judgment, as an act by the law, should estop the parties, and an award, which is another name for a judgment, which the parties have expressly stipulated should be final as to the subject submitted, should not be equally conclusive": *Brazill* v. *Isham*, 12 N. Y. 15.

It would seem plain upon sound principles of law and justice, that, whenever two persons submit any particular matter or matters in dispute or controversy between them

to the determination of a third person, whom they have mutually selected, his power to act as a judge is limited to the particular matter or matters specified, and that any exercise of his judgment upon any other question is a usurpation. The award must be within the authority conferred by the submission under which it is made, and if it exceeds that authority it is void, at least for the excess. An award will be construed favorably, so as to uphold it, if possible. No intendments will be indulged to overturn it, but, on the contrary, every intendment will be made in its favor. If the award be good in part, and bad in part, that which is good may be separated from that which is bad, and the one is in nowise dependent on the other. Under the rule that all reasonable presumptions and intendments are to be indulged in favor of the validity of awards, the court will uphold the award as to that part which is good, and reject that part which is bad, in order to give effect to the action of the arbitrators as far as it is possible to do so, consistently with the agreement of the parties: 1 Am. & Eng. Enc. 710. But this principle can have no application where, upon the face of the award, the arbitrators have undertaken to decide other or different questions than those which are submitted to them. When the parties have specified the particular matters in dispute upon which the arbitrators are authorized to make an award, it cannot be presumed that they are empowered to make an award upon other and different matters. To so hold, would bind the parties by an award upon matters to which they never consented that the arbitrators should consider or decide. Such an award is not binding upon either party, because it is founded upon matters which the arbitrators had no authority to decide, and consequently it is of no legal validity.

2. It remains to apply these principles to the case at bar. By the terms of the submission the plaintiff and defendant agree that the persons named therein as arbitra-

tors shall examine the books, accounts, and writings relating to the copartnership business, and ascertain and determine therefrom the profits or losses of the firm, the share now owned by each of the partners in the mill and plant, and other profits, if any, of the business, and that the award made by them shall be binding upon the plaintiff and defendant as a "correct statement of the profits or losses, as the case may be, of the copartnership in the business, and of the share and interest now owned by each partner in the mill and plant, and in any money or further profits, if any, belonging to the firm." It will be seen, therefore, that the particular matters which are submitted to the judgment of the arbitrators, and which they are to ascertain from the books and writings of the partnership, are (1) the profits or losses of the firm; (2) the share of each partner in the mill and plant; and (3) other profits, if any, of the business. It was upon these specified matters that the arbitrators were authorized to make an award. They were not invested with authority to pass judgment upon any other matters than those designated. As these, and especially the first, were the particular matters about which the partners were unable to agree, and which were the cause of their controversy, they were the only matters that they included in the submission, or upon which they desired the judgment of the arbitrators.

As an award must be consonant to the submission, it is plain, tested by the principles announced, that the award cannot be sustained. There is no attempt to decide specifically a single one of the matters submitted. The award on its face undertakes to state an account between the parties, which is a matter outside of the scope of the submission. The particular matters were specified which the arbitrators were to decide, and, to enable them to make their findings upon them, the agreement required that they should examine the books and accounts of the partnership, and ascertain and state therefrom each of such mat-

ters, so that either party desiring to purchase the interest of the other should be at liberty to do so by paying to the selling partner the value of his interest as so ascertained, determined, and stated; or, if each partner should desire to purchase rather than sell, then each should have the privilege of bidding such amount over and above the valuation as so ascertained and determined, etc., as provided in the contract. The award of the arbitrators defeats the operation of this provision and renders it nugatory. It is true that the award states generally that the business was conducted at a loss, but this conclusion is derived from stating an account between the partners, in order to show the indebtedness of the one to the other, by which it appears that the defendant gets the benefit of the sale of the property under execution, at a loss to the firm of four thousand five hundred and fifty dollars. In other words, the arbitrators charged the firm with five thousand five hundred and eighty-seven dollars as the value of the mill, fixtures, and live stock, and credited the firm with the sum of one thousand and thirty-seven dollars as the surplus derived under the execution sale of the same upon the judgments aforesaid for about eight hundred dollars and costs, showing a loss of four thousand five hundred and fifty dollars. The injustice of this result illustrates the wisdom of the rule that the award should follow the submission. The arbitrators had nothing to do with the appraisement or estimate of the value of the mill property, but they could not state an account between the partners, and find out which one was indebted to the other without doing so. It was the consequence of undertaking to do what they were not authorized to do under the submission. The submission does not authorize the arbitrators to state an account between the partners. The award is not consonant to the submission. It omits to decide the particluar matters which were submitted, and undertakes to decide another matter not submitted.

3.   But, conceding for the purposes of the case that the award pursues the submission, it must cover the issues involved here to operate as a bar to this suit.   The facts alleged in the supplemental complaint show that after the suit was begun for a dissolution and accounting of the partnership affairs, the agreement to arbitrate was entered into, but that before the award was made the mill and plant were sold under execution and purchased by one Conyers, and that after the award was made the plaintiff filed his supplemental complaint, in which, among other things, he alleged in effect that at said sheriff's sale the defendant, intending to cheat and defraud the plaintiff out of his interest in the mill property, confederated with one Conyers, and procured him to buy said property in his own name, but for the use of the defendant; that Conyers purchased the same with the money of the defendant and held it for his use and benefit; and that thereafter Conyers, at the request of the defendant, and without any consideration, transferred the title and possession of the property to Allord, etc.   The defendant, after denying all the material allegations, set up the award to which the demurrer was sustained, claiming that it was conclusive of the suit.   It will be seen, therefore, if it be conceded that the award did follow the submission, and was intended to put an end to the original controversy, that the additional matter set up in the supplemental complaint exhibits a state of facts—presents an issue—not contemplated by the submission, nor included in the award, and to which the award has no relevancy.   The award does not meet the matters in issue between the plaintiff and defendant, even if we give it a construction not warranted by its terms, and assume that it was intended to settle the controversy out of which arose the suit as originally brought. To give it the conclusive effect claimed, we should have to ignore the issue of fraud alleged, and render a decree for the amount found due the defendant in the award, which

was ascertained in disregard of the submission. In any view we are unable to see that any error was committed by the court below in sustaining the demurrer.

Upon the merits it is difficult, as the referee says, to arrive at a true state of the facts, owing to the incomplete manner in which the books were kept. Holding, as we think we ought, the defendant as trustee of the mill property, the question which has given us the greatest difficulty is its value. At the sheriff's sale the live stock was sold first, and then the mill and fixtures for the price already stated. The money received for the live stock and the mill and fixtures, after paying the judgment and costs, was paid over to the defendant. If the defendant be given credit for the amount for which the mill sold, and the mill and plant be considered as held by him, the question then arises, what is its value? The referee and court below valued it at three thousand five hundred dollars. The books show that the mill and plant cost considerably more than that sum, but the mill has been used for some time, and the live stock was perhaps not so valuable as when purchased. There is a very great disagreement among the witnesses as to the value of the mill property. It is not possible to arrive at an exact conclusion, but we think, taking all matters into consideration, that two thousand five hundred dollars would be its proper valuation, and the sum with which the defendant should be charged instead of three thousand five hundred dollars.

The judgment will be MODIFIED accordingly.