Argued February 13, modified March 6, rehearing denied March 27, 1917.

# OREGON–WASHINGTON R. & N. CO. v. SPOKANE P. & S. RY. CO.*

(163 Pac. 600; 163 Pac. 989.)

**Railroads—Terminals—Authority to Extend—Powers Conferred by Charter.**

1. A railroad company chartered to construct a line of railroad from one city to another is empowered to extend its lines to convenient points within these cities. The definite location by such a railroad of its terminals does not exhaust its charter powers; it may extend its terminals from time to time to keep pace with the industrial expansion of the city.

[As to meaning of "locate" or "located" as applied to railroad, see note in Ann. Cas. 1912C, 1309.]

**Railroads—Common User Clause in Ordinance—Construction—Eminent Domain—Condemnation of Limited Easement.**

2. The common user clause contained in the ordinance of a municipal corporation authorizing the bridging of a navigable river should receive a liberal construction. Such common user is available to a railroad company which desires the user only for the purpose of switching freight cars into an industrial district remote from its terminals. A proceeding fixing the compensation to be paid for such user is analogous to a condemnation proceeding, inasmuch as the rights of the junior company are conditioned on the payment of adequate compensation. As a limited easement may be condemned, under the law of eminent domain, so a railroad company may avail itself of the common user clause to secure a limited use of the bridge.

**Railroads—Use of Bridge Owned by Other Railroad—Railroad Commission—Presumptions.**

3. The presumptions are in favor of an award by the Railroad Commission sitting as a board of arbitration to determine what compensation a railroad which built a bridge is entitled to for the common use of such bridge by another road under a common user clause of the city authorizing the building of the bridge.

**Trial—Consent to Consideration of Testimony.**

4. Where defendant saw fit to go into a certain subject in the trial court, it must be held to have given its consent to the consideration by the court of the testimony adduced on that subject.

**Arbitration and Award—Setting Aside—Mistake by Arbitrators.**

5. Award of arbitrators should be set aside whenever it appears on the face of the award or otherwise by testimony properly received in suit to set the award aside and does not express their real judg-

*On annulling award of arbiters, see note in 47 L. R. A. (N. S.) 445.                                                    REPORTER.

ment, particularly where the award involves compensation for a continuing right, in which case a mistake, otherwise not remediable, may well become a gross mistake vitiating the award.

### Railroads—Use of Bridge Owned by Other Railroad—Award of Railroad Commissioners—Suit to Set Aside—Evidence.

6. In suit to set aside an award of the Railroad Commission sitting as arbitrators to determine the compensation of a railroad which built a bridge for its use by another road, evidence *held* to sustain finding that the award so entirely disregarded, mistook and misapplied the evidence introduced at the hearing before the commissioners as to deprive plaintiff road of its rights in the bridge, and of its rights in the ordinance of a city authorizing its building and containing a common user clause and in the resolution and order of the Secretary of War authorizing the bridge.

### Arbitration and Award—Suit to Set Aside—Resubmission.

7. In suit to set aside an award of arbitrators, in the absence of agreement by the parties, the court is not authorized to resubmit a question to the board of arbitrators.

### Railroads—Use of Bridge Owned by Other Railroad—Award of Railroad Commissioners—Suit to Set Aside—Determination of Question Arbitrated.

8. In suit to set aside an award of the Railroad Commission sitting as arbitrators to determine the compensation to which a railroad which built a bridge was entitled for its use by another road, where the answer of such other road asked general equitable relief, the court, having set aside the award as inadequate, should proceed to determine the reasonable compensation to be awarded.

### Railroads—Charge for Common Use of Bridge Under Ordinance by Junior Company.

9. A railroad company seeking a limited use of a bridge built by another carrier, pursuant to a port ordinance providing for common user, should be charged with a substantial part of the annual interest charge on the capital invested therein. Such junior company should also pay such part of the annual charges for operating, maintenance, taxes and depreciation as the traffic of the junior company bears to the entire traffic on the bridge.

### Arbitration and Award—Suit to Set Aside—Decree—Stipulations.

10. Where the parties to a suit to set aside an award of arbitrators agreed before the arbitrators on stipulations modifying the common-law rules of liability in the matter which the arbitration concerned, such stipulations, incorporated in the award, should be made part of the decree setting it aside and correcting its errors.

### Railroads—Charge for Use of Bridge—Modification of Decree.

11. A decree fixing the compensation to be paid by a junior company for the use of the senior company's bridge, built under an ordinance providing for common user, should give leave to the senior company to apply for a modification of the compensation in case a third company now using the bridge should cease to use it. The junior company should have the same right to apply for a modification in case one or more additional companies should secure the right to use the bridge.

83 Or.—34

**Appeal and Error—Disposition—Remand to Take Further Testimony.**

12. In such suit, where it was extremely difficult in the condition of the record to appraise fairly the value of the realty covered by the abutments and approaches to the bridge, the cause should be remanded to the trial court for a hearing on the subject, both parties to be privileged to introduce further testimony.

## ON PETITION FOR REHEARING.

**Arbitration and Award—Suit to Set Aside Award—Admissibility of Evidence—Testimony Taken before Arbitrators.**

13. In a suit to set aside an award by arbitrators on the ground that because of mistake the award did not represent the judgment of the arbitrators, the evidence taken before the arbitrators is competent and material.

**Witnesses—Reception of Evidence—Redirect Examination—Scope of Cross-examination.**

14. Where defendant, on cross-examination of a witness whose direct examination was confined to the identification of testimony considered by arbitrators, drew out testimony as to the award and what the arbitrators intended to decide, the cross-examination justified redirect examination of the witness on the same subject and foreclosed any objection which might otherwise have been urged to the competency of the evidence.

**Carriers—Use of Bridges—Determination of Compensation—Evidence—Contract for Similar Use.**

15. On proceedings to determine the compensation to be paid by one railroad for the use of a bridge constructed by another under a city ordinance requiring it to permit the user on payment of compensation, contracts fixing the terms under which different railway companies used bridges of others which failed to show a uniform practice in that respect are immaterial.

**Arbitration and Award—Use of Railroad Bridges—Determination of Compensation—Evidence—Volume of Traffic.**

16. In a suit to set aside an award of arbitrators of compensation to be paid by one railroad for the use of a bridge constructed by another, exhibits showing the number of cars switched by the owner of the bridge for the other railroad during certain periods, which included cars switched to a point across the river at which the using railroad had no terminal and covered the period when it was acquiring its main terminal across the river, and which did not include freight carried by the using railroad in less than carload lots and team freight which could not be switched, are of no value in showing the volume of the traffic of the using railroad across the bridge from which compensation for the use could be determined.

**Carriers—Use of Bridges—Compensation—Fixed Charges.**

17. A railroad owning a bridge which it was required to permit other railroads to use is entitled to a fair share of the charge for operation and maintenance of the bridge and of the interest on the investment, regardless of fluctuations of railway traffic, so that the fact that the award of arbitrators fixed an adequate charge for each car hauled across the bridge does not show that the compensation awarded by them was adequate.

**Arbitration and Award—Suit to Set Aside—Fraud and Mistake.**

18.   The rule that a judgment of the chancellor cannot be substituted for that of arbitrators does not prevent courts of equity from setting aside awards of arbitrators for fraud or mistake.

**Arbitration and Award—Suit to Set Aside—Evidence—Facts Subsequent to Award.**

19.   In a suit to set aside an award of arbitrators on the ground of mistake, affidavits showing facts subsequent to the award have no bearing on the question of whether it should be set aside, but may be considered by the court at the hearing after the award has been vacated.

**Appeal and Error—Rehearing—Matter not Argued on Original Hearing.**

20.   Where at the original hearing on appeal a decree setting aside an award by arbitrators was affirmed and compensation for the use of a railroad bridge by another railroad was determined by the court, which compensation included a requirement that the using railroad should pay a specified per cent of the interest charged on the cost of the bridge, on which question there was no argument in the court below or on the original hearing, the original opinion will be withdrawn as to that provision and the cause remanded to the lower court for a hearing thereon.

From Multnomah: John P. Kavanaugh, Judge.

Suit by the Oregon-Washington Railroad & Navigation Company to set aside an award by the Railroad Commission sitting as a board of arbitration to determine the compensation to be paid plaintiff by the Spokane, Portland & Seattle Railway Company for use of a bridge.   Decree for plaintiff, and defendant appeals.   Decree modified and cause remanded.

In Banc.   Statement by Mr. Justice McCamant.

This is a suit in equity brought by the Oregon-Washington Railroad and Navigation Company to set aside an award made by the Railroad Commission of Oregon sitting as a board of arbitration.   The award fixed the compensation to be paid by the defendant for the use by it of plaintiff's railroad bridge over the Willamette River at Portland.   The bridge was constructed under the authority of an ordinance of the Port of Portland and of a permit granted by the Secretary of War,

which adopted and approved the conditions imposed by the ordinance of the Port of Portland. The conditions contained in this ordinance which are important for the purposes of this case are as follows:

"All railroad companies using steam or such other motive power as The Oregon Railroad & Navigation Company may hereafter adopt, desiring to use the said railroad bridge and the approaches thereto shall have and be entitled to equal rights and privileges with The Oregon Railroad & Navigation Company, its successors or assigns, relative to the passage of railway trains or cars over the same, upon the payment of a reasonable compensation for such use to The Oregon Railroad & Navigation Company, its successors or assigns, and The Oregon Railroad & Navigation Company, its successors or assigns, shall upon the payment of such reasonable compensation permit any and all other such railroad companies to use said bridge and such approaches thereto, for the passage of trains or cars over the same, in the same manner and under the same rules and regulations as The Oregon Railroad & Navigation Company, its successors and assigns may prescribe for its own traffic over the said bridge, and in case the said The Oregon Railroad & Navigation Company, its successors and assigns, cannot agree with such railway company or companies as to the amount of such compensation to be paid, then and in that event the Railroad Commission of Oregon shall constitute a board to determine what said compensation shall be, and the decision of a majority of said commission upon said question shall be binding upon the parties thereto, and if at any time The Railroad Commission of Oregon shall cease to exist and The Oregon Railroad & Navigation Company, its successors and assigns cannot agree with such railway company or companies as to the amount of such compensation to be paid the Judges of the Circuit Court of the State of Oregon for Multnomah County shall constitute a board to determine what said compensation shall be, and the decision of a majority

of said judges in the premises shall be binding upon the parties thereto.''

The ordinance then proceeds to define what shall be deemed to be the approaches to the bridge.   Plaintiff formally accepted these conditions and built its bridge pursuant to the franchise thereby secured.   It appears that the bridge was completed and open to traffic August 9, 1912; that the parties were unable to agree on the compensation to be paid by the defendant for its use of the bridge; and that the defendant under date of March 5, 1913, filed its petition with the Railroad Commission of Oregon praying for a determination by that body of the compensation to be paid for the use of the bridge desired by the defendant.   It appears by the record that the defendant's passenger terminals at Portland are on the west side of the Willamette River and that the situation is such that the defendant has no occasion to use the bridge in connection with its passenger traffic.   The defendant, however, has expended nearly two million of dollars in the purchase and improvement of property on the east side of the Willamette River at Portland, in what is known as the East Portland Industrial District.   The record shows that there is already a considerable volume of traffic originating in and destined to this district, and it is the expectation of the defendant that this traffic will grow. It also appears that the defendant has secured a franchise from the City of Portland which entitles it to operate its trains on East Third Street, and the record suggests that plaintiff and the Southern Pacific Company are operating under similar franchises on East Second and East First Streets, respectively. The petition of the defendant to the Railroad Commission of Oregon asked the Commission to fix the compensation to be paid by it, not for a general use of plaintiff's bridge

for all railroad purposes, but only for the switching of freight-cars thereover. Issue was joined on the allegations of the defendant's petition. A hearing was had before the Railroad Commission and under date of July 1, 1913, the Commission made its award, the essential part of which was as follows:

"That a reasonable compensation to be paid for the passage of freight-cars and locomotives, operated by steam, over and across the said Willamette River bridge of the Oregon-Washington Railroad and Navigation Company, including a portion of the approaches thereto from a connection on North Front street on the west side of the said river to a point of connection near East Glisan street on the east side of said river is the sum of eighty-five cents (85c) per car, loaded or empty, in either direction, and the sum of one and seventy hundredths dollars ($1.70) per locomotive (including tender) in either direction over the draw of the said bridge, provided that the minimum compensation for the use of said bridge and approaches shall be the sum of five hundred and no hundredths dollars ($500.00) per calendar month."

Plaintiff refused to accept the award and on August 7, 1913, brought this suit to set it aside. Plaintiff prevailed in the Circuit Court and the defendant prosecutes this appeal from a decree setting aside the award.

MODIFIED AND REMANDED.

FURTHER MODIFIED ON PETITION FOR REHEARING AND REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Carey & Kerr,* with an oral argument by *Mr. Charles H. Carey.*

For respondent there was a brief over the names of *Mr. William W. Cotton, Mr. Arthur C. Spencer, Mr. Charles E. Cochran* and *Mr. Ralph E. Moody,* with an oral argument by *Mr. Cotton.*

MR. JUSTICE McCAMANT delivered the opinion of the court.

We desire to express our obligations to counsel who have appeared in this case for the clarifying arguments and the able and exhaustive briefs with which we have been assisted in our investigation of the important questions suggested by this record.

It was formerly necessary to secure an act of Congress in order to authorize a railroad company to bridge a navigable stream. The policy of Congress in adopting legislation of this character was to require the builder of the bridge to permit the common user thereof by other railway companies: *Union Pacific Co.* v. *Chicago, Rock Island & P. R. Co.,* 163 U. S. 583 (41 L. Ed. 265, 16 Sup. Ct. Rep. 1173) ; *Union Pacific R. Co.* v. *Mason City etc. R. Co.,* 199 U. S. 160, 161 (50 L. Ed. 134, 26 Sup. Ct. Rep. 19). In 1899 Congress passed a general act on the subject (30 Stats. at Large, 1151, 4 U. S. Comp. Stats. 1913, § 9971, 6 Fed. Stats. Ann. 805), giving general authority to the Secretary of War and to the several states to act in all cases involving the bridging of navigable streams lying wholly within the boundaries of one state. Pursuant to this statute and the construction placed thereon by the Federal Supreme Court in *Montgomery* v. *Portland,* 190 U. S. 89 (47 L. Ed. 965, 23 Sup. Ct. Rep. 735), plaintiff secured authority to construct the bridge in question, subject to certain conditions, one of which was the common user clause above quoted.

1. Plaintiff contends that the defendant is not entitled to avail itself of the common user clause in the ordinance of the Port of Portland, because it is not authorized under its articles of incorporation to operate between its passenger terminals on the west side of the Willamette River in Portland and the in-

dustrial district of East Portland. The articles of incorporation of the defendant have been received in evidence. They confer authority, among other things, for the construction, maintenance and operation of a line of railway from Spokane, Washington, to Portland, Oregon. It has been frequently held that the line authorized by such a grant need not terminate at the boundaries of the terminal cities, but may extend to convenient points within them: 2 Elliott on Railroads, 927a; 33 Cyc. 122; *Farmers' Turnpike Road* v. *Coventry,* 10 Johns. (N. Y.) 389; *Mohawk Bridge Co.* v. *Utica & S. R. R. Co.,* 6 Paige Ch. (N. Y.) 554; *Mason* v. *Brooklyn City etc. R. Co.,* 35 Barb. (N. Y.) 373, 377; *Moses* v. *Pittsburgh etc. R. Co.,* 21 Ill. 516; *McCartney* v. *Chicago etc. R. Co.,* 112 Ill. 611, 626; *Tennessee & A. R. Co.* v. *Adams,* 3 Head (Tenn.), 596, 597; *Waycross Airline R. Co.* v. *Offerman & W. R. Co.,* 109 Ga. 827, 829 (35 S. E. 275); *Rio Grande R. Co.* v. *Brownsville,* 45 Tex. 88, 93. It has also been held that the definite location by a railroad company of its terminals does not deprive it of the power to extend its facilities into other parts of the city; *Appeal of Western Pennsylvania R. Co.,* 99 Pa. St. 155, 161. Any other rule than that announced in these authorities would greatly hamper the development of cities, demanding as they do enlarged terminal facilities to keep pace with their industrial expansion. The charters of railroad companies should not be subjected to the narrow and technical construction which we must adopt in order to sustain plaintiff's contention on this point.

2. It is next contended by plaintiff that the defendant is not a railroad company within the purview of the common user clause of the ordinance of the Port of Portland. This claim is based on the fact that the bridge and its approaches will not constitute a part of

the main line of the defendant and will not be used by its passenger trains or for the carriage of mail and express matter, which is a traffic appurtenant to the carriage of passengers, and that, on the contrary, the defendant desires the common user privilege solely for the purpose of switching cars between its established terminals on the west side of the Willamette in Portland and the trackage which it controls on the east side of the river in the same city.

It has been held that a common user clause, such as that involved in the case at bar, is entitled to a liberal construction: *Joy* v. *St. Louis,* 138 U. S. 1, 38, 50 (34 L. Ed. 843, 11 Sup. Ct. Rep. 243). If we are to give a liberal construction to the common user clause we think we must hold that the defendant is entitled to the benefit of its terms. The purpose in view in inserting a common user clause in a bridge franchise is twofold. It is important that navigation shall not be impeded by the construction of bridges over navigable streams except as such bridges are needed, and it is also important that public service corporations shall not be required to expend money unnecessarily in providing facilities for which the public must pay in the form of transportation charges. The use which the defendant desires to make of the bridge in question is a legitimate railroad use and would probably have justified the Secretary of War and the Port of Portland in granting the defendant a franchise for the construction of an additional bridge across the Willamette River. It is much better from every point of view that the present bridge should be used by both of these parties. The equal rights and privileges relative to the passage of railway trains and cars over the bridge, provided for in the ordinance, and for which plaintiff is entitled to compensation, are the right to pass trains

and cars thereover without discrimination and with the same facility as that under which plaintiff operates on the bridge.    In order to the enjoyment of these rights and privileges it is not necessary that defendant should transport thereover the same number or the same kind of trains and cars as plaintiff.

It is true, as contended, that the defendant's right to use the bridge grows out of the franchise ordinance and is not dependent on a judgment of condemnation. It has been held that the parties are not entitled to a trial by jury for the purpose of fixing the compensation to be paid in such a case as this: *Union Depot R. Co.* v. *Southern Ry. Co.,* 105 Mo. 562 (16 S. W. 920). The proceeding is nevertheless somewhat analogous to a condemnation proceeding.    The payment to the senior company of adequate compensation is a condition to the exercise of the right demanded by the junior company: *Grand Avenue Ry. Co.* v. *People's Ry. Co.,* 132 Mo. 34, 38 (33 S. W. 472, 475).    It is therefore pertinent that the courts have held that in a condemnation proceeding a limited easement may be condemned: *St Louis etc. R. Co.* v. *Postal Tel. Co.,* 173 Ill. 508, 535 (51 N. E. 382).    It is also well established that the condemnor may by proper proceedings had in the condemnation action limit the right demanded, with a view to the reduction of the damages to be assessed: 2 Lewis on Eminent Domain, 1247, and note; *Oregon Ry. & Nav. Co.* v. *Owsley,* 3 Wash. Ter. 38 (13 Pac. 186, 188); *State ex rel. Kent Lumber Co.* v. *Superior Court,* 46 Wash. 516, 520 (90 Pac. 663); *Spokane Valley etc. Co.* v. *Arthur D. Jones & Co.* 53 Wash. 37, 45-48 (101 Pac. 515); *Tacoma Eastern R. Co.* v. *Smithgall,* 58 Wash. 445, 451 (108 Pac. 1091).

We therefore reach the conclusion that the defendant is entitled to avail itself of the common user clause

contained in the bridge franchise of plaintiff for the transportation over the bridge of freight-cars only.

3. This brings us to the question of the validity of the award made by the Railroad Commissioners. The presumptions are in favor of such an award: *Garrow* v. *Nicolai*, 24 Or. 76, 84 (32 Pac. 1036). As shown by the above case and by the text-books which treat of the subject, there are well-established principles determining the circumstances under which an award can be set aside in equity. Has plaintiff brought itself within the operation of these principles?

At the inception of the trial in the court below, plaintiff called as its witness Mr. Clyde B. Aitchison, one of the members of the Railroad Commission, who participated in the arbitration and the award. Plaintiff called this witness merely for the purpose of identifying the testimony which was before the arbitrators and on which they acted. The defendant thereupon proceeded further to examine him, over the objection of plaintiff, as follows:

"Q. As a matter of fact, the Commission in making this award of reasonable compensation allowed something for profits, did it not?

"A. I do not have the exact details in mind of the manner in which the award was made up. I do recall that after considering items of expense as best we could determine, an additional sum was estimated and included.

"Q. Included as profit, was it not, allowed to the owner of the bridge?

"A. Well, it was included over and above every item of expense we could figure on, and it was going to the owner of the bridge.

"Q. Do you remember what percentage it was?

"A. I do not, without having access to the papers that were used at the time."

On redirect examination plaintiff followed up this line of proof and the witness testified as follows:

"A. All I can say to that is that to the best of our ability we considered every fragment of evidence that was introduced by either party, and gave it such weight as we thought proper. But, as far as being able at this time to recall the state of that voluminous record, I cannot, except in a very general way.

"Q. Well, you said you made an allowance of profit?

"A. I recall that. I did not say that it was profit. I say that after we had figured out every item of expense that we could, then, in order to be certain that we were dealing fairly, as we considered it, with the parties, and had not overlooked anything, and to make sure there was a return, I remembered we figured a return on the investment, and when we came to deliberate, we added still an additional amount, so you can call it profit or what you please.

"Q. Do you mean to say $500 would make any return on the value of this bridge—$6,000 a year?

"A. I don't undertake to say anything about that now. I am simply telling you that we passed on this to the best of our ability from the records that were here, and we intended to give a profit and thought we were doing it.

"Q. You intended to make a fair return on the investment to the owner, and something in the way of profit?

"A. Yes, on the theory on which we made the award."

4. The Massachusetts authorities hold that the testimony of an arbitrator is admissible for the purpose of showing the matters considered by the arbitrators and the conclusions reached by them thereon: *Barrows* v. *Sweet,* 143 Mass. 316 (9 N. E. 665). There is a line of authority to the contrary, but we do not find it necessary to determine the question suggested by these conflicting cases. The defendant saw fit to go into this subject in the court below and must be held to have given its consent to the consideration by the court of the testimony adduced: *Wm. H. Low Estate Co.* v.

*Lederer Realty Corp.*, 35 R. I. 352 (86 Atl. 881, 882, Ann. Cas. 1916A, 341). It will be noted that Mr. Aitchison spoke for the Commission and testified not merely as to matters which he himself considered and the conclusions which he himself reached, but rather as to the matters considered and determined by the entire board of arbitration. The effect of his testimony is that the board intended to allow plaintiff a proper share of the expenses involved in maintaining and operating the bridge, a return on the capital invested by plaintiff in the bridge and its appurtenances, and a further and additional sum which the witness declined to designate as profit. In the case of *Wm. H. Low Estate Co.* v. *Lederer Realty Corp.*, 35 R. I. 352 (86 Atl. 881, 882, Ann. Cas. 1916A, 341), the court in commenting on similar testimony given by arbitrators said:

"If it appears from this testimony that the appraisers misconceived their duty under the submission, and that this misconception led them to an entirely erroneous conclusion, we cannot disregard that testimony, although it should result in an impeachment of the award."

5. It is well established by the authorities that an award should be set aside whenever it appears on the face of the award, or otherwise by testimony properly received, that the award is not the result intended by the arbitrators and does not express their real judgment: *Buys* v. *Eberhardt*, 3 Mich. 524; *Eisenmeyer* v. *Sauter*, 77 Ill. 515, 517; *Boston Water Power Co.* v. *Gray*, 6 Met. (Mass.) 131, 168, 169; *Barrows* v. *Sweet*, 143 Mass. 316 (9 N. E. 665); *Consolidated Water Power Co.* v. *Nash*, 109 Wis. 490 (85 N. W. 485, 490); *Adams* v. *New York etc. Ins. Co.*, 85 Iowa, 6, 12 (51 N. W. 1149); *Conger* v. *James*, 2 Swan (Tenn.), 213,

214; *Humphreys* v. *Victoria,* 5 Dominion L. R. 294; 5
C. J. 181; 2 R. C. L. 392, 393.

There was no dispute in the court below as to the
testimony which was before the arbitrators and on
which they acted.    This testimony was transcribed and
extended and on proper identification was received in
evidence in this case.    Except as to the value of the
real estate occupied by the abutments and approaches
of the bridge there was but little conflict in the testi-
mony taken before the arbitrators.    There are two
decks to the bridge, the upper deck being adapted to
foot and vehicle travel, and the lower deck devoted ex-
clusively to railway service.    The testimony of the de-
fendant showed that the cost of the railway portion
of the bridge was $882,980.47; that the approach
tracks which the defendant would of necessity use cost
$43,960.25.    The testimony also showed that the safe
and convenient operation of trains over the bridge
demanded the construction of an interlocking plant, at
a cost of about $40,000, and that $26,750.80 of this sum
was properly chargeable to the tracks which the de-
fendant would use.    The testimony as to the value of
the real estate occupied by the abutments of the bridge
and by the tracks leading thereto was very conflicting
and is in unsatisfactory shape.    We have examined it
with care and given the defendant the benefit of every
disputed piece of testimony and every inference legiti-
mately to be drawn therefrom.    We do not see how
this real estate could be appraised at less than $150,000.
The arbitrators may have charged a part of this value
to the upper deck of the bridge, but they could not
have failed to charge at least half of it to the portion
of the bridge used exclusively for railway traffic.    The
total of these investments of capital chargeable to the
railway portion of the bridge is $1,028,691.52.    The

legal rate of interest is six per cent and the interest at that rate on the capital invested in the bridge amounts to $61,721.49 per annum. There were circumstances presented to the board which might have led them to charge the defendant with interest at the rate of five per cent. On this basis the annual interest charge would be $51,434.58. The testimony further showed that the life of the bridge would be twenty years and that it was to be expected that it would have to be renewed or replaced at the end of that time. It further appeared from the testimony that there would be an annual cost for maintenance of the railway portion of the bridge, of $5,256.06; the annual cost of operation thereof amounted to $7,980; and that the operation of the interlocking plant would involve an additional continuing annual expenditure of $3,720; and that the maintenance of the interlocking plant would involve a continuing annual expense of $960. The sum total of these expenses is $17,916.06. The testimony does not show the taxes annually charged against the bridge, but it does appear that the bridge was assessed at $457,500. The property is subject to taxation for the support of the state, the county, the city, the school district and the Port of Portland. The tax rate must therefore be higher than that levied in a part of the state without the boundaries of a city and port district. The tendency is for the tax rate to increase.

When Mr. Aitchison testified that the board intended to allow to plaintiff a legitimate and proper share of the above expenses, and also a fair return on the capital invested he must of necessity have referred to that portion of the award which charges the defendant with a minimum payment of $500 a month. The fact that the arbitrators attached to this award a provision assuring plaintiff that its compensation should not fall

below a stated sum is proof that they doubted whether the car toll fixed by them would yield this minimum compensation. There was no testimony before the arbitrators bearing on the number of locomotives and cars of the defendant which would use the bridge, and there could therefore have been no intelligent estimate of the returns of plaintiff from defendant's user of the bridge except as based on the minimum charge of $6,000 per year. If there be deducted from this sum any substantial amount to meet the indefinite sum referred to as a profit which was allowed by the Commission, it is evident that the remainder would be but little, if any, in excess of the defendant's proper share of the expenses of maintaining and operating the bridge and paying taxes thereon. In the light of the uncontradicted testimony before the arbitrators, giving the defendant the benefit of every question arising thereon as to which there could be a dispute, it is apparent that the arbitrators have allowed plaintiff nothing, or practically nothing, in the way of interest on its investment. On the most favorable view of the record to be taken from the standpoint of the defendant there is a continuing annual charge growing out of the operation and depreciation of the bridge, and interest on the capital invested therein, amounting to at least $90,000, and the award of the arbitrators assures to plaintiff only the sum of $6,000 as the price of the common user of the bridge which was awarded the defendant.

Testimony was offered in the court below to the effect that in twenty months' operation under the award the defendant had paid the plaintiff the sum of $12,-876.15. This return is equivalent to $7,725.60 per annum, but little in excess of the minimum provided for by the board. The lower court found:

"That the car tolls which the defendant is required to pay under the award applied to the number of cars which the defendant will pass or switch over said bridge, produces an annual sum which is so disproportionate to a reasonable annual interest charge upon the value of the bridge, and necessary operation and maintenance charges, as to deprive the plaintiff of any compensation for the use of the bridge, and that said award so entirely disregards, mistakes and misapplies the evidence introduced at the hearing as to deprive the plaintiff of its rights in said bridge and of the rights in said ordinance and resolution and order of the Secretary of War."

6. We are convinced that the above finding is substantially accurate. The testimony of Mr. Aitchison relieves us of the unpleasant necessity of holding that this indefensible award represents the deliberate judgment of the arbitrators. If we accept the testimony of Mr. Aitchison, as we are bound to do on this record, the conclusion is inevitable that by some mistake in computation or otherwise the award fails to express the conclusion reached by the arbitrators on the subject of compensation and it follows that the lower court did not err in setting it aside. There is a line of authority to the effect that an award will be set aside for mistake of fact so gross as to evidence partiality on the part of the arbitrators: 5 C. J. 182; 2 R. C. L. 393; *Rand* v. *Redington,* 13 N. H. 72 (38 Am. Dec. 475, 476); *Williams* v. *Chicago etc. Ry. Co.,* 112 Mo. 463 (20 S. W. 631, 34 Am. St. Rep. 403, 419, 423). It should be remembered in connection with this award that it involved compensation for a continuing right. A mistake which would ordinarily not be relieved against might well become a gross mistake when multiplied by twenty. It is unnecessary for us to discuss the application of this principle to the award, because it is clear

83 Or.—35

that the award must be set aside on the grounds above stated.

The decree of the lower court setting aside the award is right and is affirmed. The findings of the lower court, adjudging that the defendant is not entitled to use the bridge for the transportation of freight-cars thereover, are set aside.

7, 8. In the absence of an agreement by the parties the court is not authorized to resubmit a question to a board of arbitrators: 5 C. J. 207; *Smith* v. *Smith,* 28 Ill. 56, 59; *Fitzgerald* v. *Fitzgerald,* Hardin (3 Ky.), 227, 235, 237; *In re Cuerton,* 7 D. & R. 774; 16 E. C. L. 321; *In re Graves,* 21 Man. 417, 425. On the other hand, the defendant's right to use plaintiff's bridge on payment of reasonable compensation should not be permitted to fail because the arbitration has not resulted in a valid award, or because the parties are unable to agree: *Central Trust Co.* v. *Wabash etc. Ry. Co.,* 29 Fed. 546, 557. The answer of the defendant asks for general equitable relief. We think, therefore, that the court should proceed to determine in this suit the reasonable compensation to be awarded plaintiff: *Grosvenor* v. *Flint,* 20 R. I. 21, 24 (37 Atl. 304); *Cooke* v. *Miller,* 25 R. I. 92 (54 Atl. 927, 1 Ann. Cas. 30); *Wm. H. Low Estate Co.* v. *Lederer Realty Corp.,* 35 R. I. 352 (86 Atl. 881, 884, 885, Ann. Cas. 1916A, 341); *Coles* v. *Peck,* 96 Ind. 333 (49 Am. Rep. 161); *Biddle* v. *Ramsey,* 52 Mo. 153; *Hug* v. *Van Burkleo,* 58 Mo. 202; *Pretzfelder* v. *Merchants' Ins. Co.,* 116 N. C. 491 (21 S. E. 302).

9. The bridge is used by three railroad companies, the parties to this suit and the Southern Pacific Company. In view of the fact that defendant desires the use of the bridge for freight traffic only, it should not be charged with one third of the interest on the in-

vestment and one third of the depreciation charge, but for the reasons outlined by Judge BREWER in *Central Trust Co.* v. *Wabash etc. Ry. Co.*, 29 Fed. 546, 559, we think the defendant should pay a substantial part of these charges.   The evidence shows that the operation of defendant's trains over the bridge will somewhat interfere with main line traffic on plaintiff's road and on the Southern Pacific.   After much consideration we have concluded that defendant's user of the bridge for freight traffic only should be conditioned on the payment to plaintiff of twenty per cent of the interest on plaintiff's investment in the bridge and its approaches, eliminating therefrom so much of the investment as is chargeable to the upper deck of the bridge. The defendant should also pay such proportion of the expenses of plaintiff for maintenance and operation of the railway portion of the bridge and taxes thereon as its traffic bears to the entire traffic on the bridge.   Defendant should pay a like proportion of an annual depreciation charge to be fixed in view of the probable life of the bridge.   Interest should be figured at the legal rate.

10, 11. The parties agreed before the arbitrators on certain stipulations modifying the common-law rules of liability in the operation of the bridge and these stipulations which were incorporated in the award should be made a part of the decree.   In case the Southern Pacific Company shall cease to operate over the bridge plaintiff should have leave to apply for a modification of the compensation and in case one or more additional railroads should secure the right to operate thereover the defendant should have a similar right to apply for such modification.   Plaintiff's rules for the operation of the bridge should accord the defendant the right to transport freight-cars thereover with the same facility

as that accorded the Southern Pacific Company and to plaintiff's own traffic.

12. There are reasons why this compensation should not be definitely determined by this court at this time. Plaintiff, on the hearing in the circuit court, offered some evidence additional to that which had been offered before the arbitrators, bearing on the reasonableness of the compensation. The defendant did not elect to offer any additional evidence on this line, preferring to stand on its claim that the arbitration judgment was valid and binding. The record before us is not by any means satisfactory as to the value of the real estate covered by the abutments and approaches to the bridge. Some of the witnesses base their estimates on square feet, others of them on river frontage, and others estimate the value of the property by the lot or quarter block. It is extremely difficult in the present condition of the record to compare the testimony of these witnesses, and to appraise fairly the value of this real estate. For these reasons we think that the cause should be remanded to the lower court for a hearing on this subject, both parties to be privileged to introduce further testimony if they so elect.

The cause will be remanded to the lower court for further proceedings in accordance with this opinion.

MODIFIED AND REMANDED.

FURTHER MODIFIED ON PETITION FOR REHEARING AND REHEARING DENIED.

Modified and rehearing denied March 27, 1917.

## ON PETITION FOR REHEARING.

(163 Pac. 989.)

On petition for rehearing. Original opinion withdrawn in one particular and otherwise adhered to. Rehearing denied.

*Messrs. Carey & Kerr,* for the petition.

*Mr. William W. Cotton, Mr. Arthur C. Spencer, Mr. Charles E. Cochran* and *Mr. Ralph E. Moody, contra.*

In Banc. MR. JUSTICE McCAMANT delivered the opinion of the court.

13. The defendant in a petition for rehearing has attacked the correctness of our conclusions and is entitled to an answer to the propositions discussed in its petition. Our attention is directed to the objection reserved by the defendant to the admissibility in evidence of the testimony taken before the arbitrators. We are asked to rule on this objection. It is true, as contended, that defendant did not waive this objection by cross-examining the witness who identified it. We think this evidence was competent and material to the determination of the issues raised by the pleadings and that the lower court did not err in receiving it: *Thompson* v. *Blanchard,* 2 Iowa, 44, 49; *Thrasher* v. *Overby,* 51 Ga. 91; *Bean* v. *Wendell,* 20 N. H. 213, 219.

14. The direct examination of Mr. Aitchison was confined to the identification of the testimony which was considered by him and his associates. The defendant on cross-examination drew out testimony as to the award and what the arbitrators intended to decide

thereby.   This cross-examination was beyond the scope of the direct examination; it justified redirect examination of the witness on the same subject and forecloses any objection which might otherwise be urged to the competency of the evidence: *Willis* v. *Abraham,* 31 Or. 562, 565 (51 Pac. 79).

15. Complaint is made that no notice was taken in the previous opinion of three contracts offered in evidence by the defendant, defining the terms under which different railway companies are operating over the Northern Pacific bridge at Kennewick, Washington, defendant's bridge across the Willamette at North Portland and the Columbia River bridge at Vancouver owned jointly by defendant and the Northern Pacific. If it had been shown that there is a uniform practice among railroad companies to determine in a certain way the compensation to be paid by a junior company for use of the facilities of the senior company, this would have been material as bearing on some of the questions discussed in our former opinion.   But the testimony fails to show any such uniform practice; the inference to be drawn from this sort of testimony is adverse to the defendant's contention.   In the three contracts above referred to the junior company is chargeable with such share of the interest on the investment as its traffic bears to the entire traffic carried over the bridge.   In the Vancouver bridge contract the plaintiff is also charged with the expense of reconstructing the bridge, in such proportion as the plaintiff's traffic during a five-year period bears to the entire traffic on the bridge during the same period.   It appears that plaintiff offered to pay defendant a third of the interest charge on the cost of the bridge when it was expected that three railroads would use it, and a fourth of this charge when it was ascertained that four

railroads would operate over it.   At defendant's suggestion the contract was drawn as above and in practice plaintiff is paying more than a fourth of the interest charge.

The evidentiary value of the other contracts offered by the defendant is impaired by the circumstance that they are contracts made by the defendant with the Northern Pacific and the Great Northern, and the evidence shows that these latter companies own the stock of the defendant, share and share alike.   The contracts are therefore little more than a convenient form of bookkeeping which the common owners have elected to adopt.

Plaintiff, on the other hand, has offered in evidence seven contracts all providing for the use of railway facilities by competing lines, and in all these cases the junior company makes a substantial contribution to the charge for interest on the investment, regardless of the volume of its traffic.   In most of these cases the junior company pays a share of the interest charge based wholly on the number of users and without regard to the relative volume of traffic.   In one of the contracts, that under which the plaintiff secures access to a traffic-producing territory in West Seattle by use of the facilities of the Northern Pacific, the conditions are closely akin to those in this case.   All these contracts have to do with facilities in this part of the union; plaintiff or one of its subsidiary companies is a party to all of them and some part of the Hill system of roads to which defendant belongs is also a party to each of them.

16. The petition challenges the correctness of the statement in the opinion that there was no evidence before the arbitrators bearing on the number of defendant's locomotives and cars which would use the

bridge.   We are referred to Respondent's Exhibits 25, 26, 16 and 17.   These exhibits were not overlooked in preparing the former opinion.

It appeared by the testimony offered before the arbitrators that plaintiff had put in effect a tariff for the switching of cars from the west to the east side of the Willamette at Portland and that a number of defendant's cars had been so switched.   Exhibit 16 was a table showing that in the two years ending March 31, 1913, 21,395 cars had been so switched by plaintiff for the Hill lines, of which defendant is one; Exhibit 17 segregated the loaded cars in this list from the empty cars and segregated the loaded cars switched for defendant from the loaded cars switched for the Northern Pacific.   There was no such segregation of the empty cars.   Exhibit 25 was a table showing the engines and trains of plaintiff and the Southern Pacific using the bridge from May 4, 1912, to July 25, 1912. Exhibit 26 was a table of the Hill line cars switched across the bridge from July, 1912, to March, 1913. This table showed that 8,780 of defendant's cars had been so switched during this period.   Some of the cars tabulated in these exhibits had been switched over the bridge with which we are concerned in this case, but most of them used the old bridge which it replaced.

The evidence showed that a large part of the traffic switched across the bridge was destined to Albina. We are not concerned with that traffic in this case because the defendant has no terminal in Albina and could not avail itself of a common user of the bridge to reach Albina.   The testimony further shows that the period covered by these tabulations was the period when the defendant was acquiring its terminal facilities in East Portland.   Defendant's expenditures for this purpose during the two-year period covered by

Exhibit 16 exceeded $1,400,000. It has since made large additional expenditures and is now the owner of extensive terminal facilities in East Portland.

The evidence further shows that the defendant was unable to move certain classes of its traffic under these switching tariffs. Freight in less than carload lots and team freight could not be so handled. We think it clear that these tabulations are no basis on which to figure the probable traffic of the defendant under the common user clause involved in this case, and that the arbitrators could not have come to a different conclusion. It appears upon the face of the award that they were uncertain as to the volume of the defendant's traffic. The testimony in the Circuit Court shows that the tabulations used before the arbitrators throw no light on the volume of defendant's traffic under the common user clause because of the large share of defendant's business which is destined to Albina, which is still handled under plaintiff's switching tariff and which nevertheless entered into these tabulations.

In examining Mr. J. D. Farrell, president of plaintiff, counsel for the defendant suggested that defendant's traffic would be possibly one tenth of the entire use of the bridge. This suggestion was of course not evidence, but if it were accepted as such it would convincingly prove the mistake in the award. The annual charge for operating and maintaining the bridge could not have been figured by the arbitrators at less than $90,000; the minimum rental, to which alone Mr. Aitchison's testimony is referable, was $6,000. It is apparent therefore that if the arbitrators figured on these lines their award did not insure to plaintiff a profit over and above defendant's share of the annual charges and did not conform to their decision.

17. The petition contains an argument in defense of the provision in the award fixing the compensation at eighty-five cents a car. The award fixing this car toll might be upheld if the minimum rental provided were adequate and in conformity with the conclusions of the arbitrators. Plaintiff is entitled to receive from every carrier using its bridge a fair share of the annual charge for operation and maintenance and a fair proportion of the interest on its investment. Plaintiff is entitled to be assured of this revenue through all the fluctuations of railway traffic. Mr. Aitchison testifies that the arbitrators decided to provide such return and to allow a profit besides.

The petition argues that the award contains no mistake, but the argument is based wholly on the assumption that there was evidence before the arbitrators as to the volume of defendant's business which would move over the bridge under the award. There being no such evidence, the argument is not convincing.

18. A re-examination of the record confirms the conclusion that the award must be set aside. The petition for rehearing complains that we have substituted "the judgment of the chancellor" for that of the arbitrators. A long line of authorities holds that this should not be done. What is meant by these decisions is that courts should not set aside awards because their judgment on the matters submitted differs from that of the arbitrators. The latter are usually empowered by the agreement of submission to decide erroneously as well as correctly and by the terms of their contract parties will be held bound by the award.

The same courts which announce these doctrines hold that it is the duty of courts of equity to set aside awards for fraud or mistake. One of the best established branches of the jurisdiction is that which requires the

setting aside of an award which through mistake of the arbitrators fails to express their real decision. The duty is as clear as that which requires this court on rehearing to correct an opinion which through inaccuracy of expression fails to state the decision intended to be rendered. A failure to set aside the award in this case would work manifest injustice. It would impose on plaintiff for a period of nearly twenty years a measure of compensation for the use of the bridge which the arbitrators did not intend to impose.

Defendant is entitled to use the bridge for the purpose desired and plaintiff is entitled to reasonable compensation for such use. The award being set aside, the machinery provided for the determination of the compensation has failed. It would be a reproach to the law if the rights of the parties should thereby lapse. It is the province of courts of equity to provide remedies in such cases and it is in this view of the case that we have fixed a measure of reasonable compensation for the use of the bridge sought by the defendant.

19. The petition is supported by an affidavit setting up the amounts paid by defendant during the year 1916 for use of the bridge, and the number of cars operating thereover. These facts can have no bearing on the question of whether the award should be set aside, but they may be considered on the hearing in the Circuit Court hereinafter provided for.

20. Strenuous objection is offered to the provision in our former opinion that defendant should pay twenty per cent of the interest charge on the cost of the bridge. Plaintiff cited a number of authorities to the effect that when a court is called on to determine compensation for a common user the junior company will be charged with half the cost or interest charge if but two carriers are using the facilities, or with one third thereof if

there are three users.   This was squarely held in *Central Trust Co.* v. *Wabash etc. Ry. Co.*, 29 Fed. 546, a case twice before the Federal Supreme Court under different titles: *Joy* v. *St. Louis*, 138 U. S. 1 (34 L. Ed. 843, 11 Sup. Ct. Rep. 243), and *St. Louis etc. R. Co.* v. *Wabash R. Co.*, 217 U. S. 247 (54 L. Ed. 752, 30 Sup. Ct. Rep. 510.   The same principle is announced in *Grand Avenue Ry. Co.* v. *People's R. Co.*, 132 Mo. 34 (33 S. W. 472) ; *Grand Ave. Ry. Co.* v. *Citizens' Ry. Co.*, 148 Mo. 665 (50 S. W. 305) ; *Grand Ave. Ry. Co.* v. *Lindell Ry. Co.*, 148 Mo. 637 (50 S. W. 302) ; *Toledo Consol. St. Ry. Co.* v. *Toledo Electric St. Ry. Co.*, 6 Ohio C. C. 362; 3 Ohio C. D. 493, 511.   The last case is approved and followed in *Toledo Elec. St. R. Co.* v. *Toledo and Maumee etc. R. Co.*, 6 Ohio C. D. 578.   For the reasons stated in our former opinion we do not think that the rule announced in these authorities should be applied rigidly in this case, but the above authorities should be followed to the extent of imposing on the defendant a substantial share of the capital charge.   In the Omaha bridge cases the federal courts charged each user of the bridge an annual rental of $45,000 without investigation into the volume of the traffic.   As was pointed out on the argument, plaintiff is chargeable with interest on its investment in this bridge even though through flood or strike the railroads cease to operate over it.   If defendant is to use this facility in order to reach a traffic-producing territory it should bear a substantial portion of the interest charge on the capital invested.   These are the reasons why it seemed to us that defendant should be charged with twenty per cent of the interest charge in this case.   The petition makes the point that there has been no argument on this particular question.   It may be that argument could throw further light upon it.   The question is so im-

portant that we are disposed to give every opportunity to the parties to present their views. So much of the opinion as fixes this particular charge will therefore be withdrawn and the cause remanded to the lower court with instructions to hear argument and determine the share of the interest charge to be imposed on defendant on the principles announced in this and the former opinion. In other respects the former opinion is adhered to and the petition for rehearing is denied.

MODIFIED AND REMANDED.

FURTHER MODIFIED ON PETITION FOR REHEARING AND RE-HEARING DENIED.